(85 Misc. Rep. 27)

### ENG v. CAMMANN et al.

(Supreme Court, Appellate Term, First Department. April 14, 1914.)

1. PRINCIPAL AND AGENT (§ 177*)—AUTHORITY OF AGENT—NOTICE TO PRINCIPAL.

Where a customer who dealt at a branch office of a brokerage firm gave a letter to the branch manager addressed to the firm, stating that they were authorized to accept buying and selling orders for her account from the manager, and the brokerage firm allowed the manager to act as the customer's agent, notice to the manager of the revocation of his authority is notice to the firm, because of the dual nature of his position.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 670–679; Dec. Dig. § 177.*]

2. ACCORD AND SATISFACTION (§ 9*)—COMPROMISE AND SETTLEMENT (§ 6*)—WHAT CONSTITUTES.

Where there was a dispute over plaintiff's account with a brokerage firm, plaintiff's acceptance of a check for the balance admitted to be due by the firm does not constitute an accord and satisfaction, where it was agreed at the time of the acceptance that plaintiff's claim would be made good.

[Ed. Note.—For other cases, see Accord and Satisfaction, Cent. Dig. §§ 88–91; Dec. Dig. § 9;* Compromise and Settlement, Cent. Dig. §§ 35–50; Dec. Dig. § 6.*]

3. ACCORD AND SATISFACTION (§ 27*)—COMPROMISE AND SETTLEMENT (§ 24*)—EVIDENCE—SUFFICIENCY.

In an action by one of its patrons against a brokerage firm, the question whether the matter in dispute was disposed of by an accord and satisfaction *held*, under the evidence, for the jury.

[Ed. Note.—For other cases, see Accord and Satisfaction, Cent. Dig. §§ 31, 59, 83, 97, 110, 135, 150; Dec. Dig. § 27;* Compromise and Settlement, Cent. Dig. § 95; Dec. Dig. § 24.*]

Appeal from City Court of New York, Trial Term.

Action by Julia Eng against Charles L. Cammann, Jr., Edmund Fish, and Alexander B. Cayce, doing business under the firm name and style of Cammann & Co. From a judgment for plaintiff and order denying a new trial, defendants appeal. Reversed and remanded.

Argued March term, 1914, before SEABURY, LEHMAN, and BIJUR, JJ.

Frayer & Alden, of New York City (Eugene Frayer, of New York City, of counsel), for appellants.

Russel R. Vaughn, of New York City, for respondent.

LEHMAN, J. The defendants are a firm of stockbrokers. The plaintiff had an account with them, dealing through a branch office

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

where one Vincent Goodwin was employed as manager. The plaintiff was accustomed to give buying and selling orders to the manager, who transmitted them to the defendants for execution. There is no dispute that all such orders were binding on the defendants. On April 2, 1912, Goodwin told the plaintiff that he could make a few dollars for her that she had lost in other transactions, and thereupon the plaintiff gave Goodwin the following written authority:

"Cammann & Co.: This letter authorizes you to accept buying and selling orders for my account from Mr. Vincent Goodwin.
              "[Signed]   Mrs. John Eng."

This letter was apparently transmitted to the defendants through Goodwin, and thereafter the defendants accepted from Goodwin, their manager, orders signed by him for the plaintiff. Subsequently the plaintiff notified Goodwin that she wished all transactions for her account to cease, and that her account should be closed. Goodwin, however, continued to give orders in the plaintiff's name to the defendants without informing them of the revocation of his authority, and the defendants continued to execute the orders. The plaintiff has now recovered judgment upon the theory that the notice to Goodwin of the revocation of his authority was notice to the defendants.

[1] I think that the evidence sufficiently shows that the letter of authority signed by the plaintiff, though delivered to Goodwin, was intended to be shown to the defendants. Goodwin as manager of the defendants' branch house, in my opinion, had no implied or apparent authority to accept discretionary authority from customers, placing upon him the double duty of representing the customer in giving the order and the defendants in transmitting the order. The written authority was necessary in order to enable him to show the defendants that he had the right to bind the plaintiff when he transmitted orders made by himself in her behalf, and the defendants could, upon the receipt of that written authority, have refused to receive such orders on the ground that his assumption of a discretionary agency for a customer was inconsistent with his agency of their firm as manager. With knowledge, however, of this new relationship they continued to allow their manager to deal with the plaintiff, not only as her personal agent, but as their manager, and by virtue of the dual relationship thus created, when the plaintiff revoked her previous authority, the notice given to Goodwin of this revocation was also a notice to the defendants, given to their manager acting within the scope of his duties. Even though it should be said that Goodwin acquired this notice, not as manager for the defendants, but as the plaintiff's agent, yet when thereafter he assumed to transmit orders made by himself as agent, he was acting within the scope of his duties as manager of the defendants, and his knowledge of the actual facts acquired by him in any manner was the knowledge of the defendants. The defendants, having placed Goodwin in a position where he was their representative for the purpose of obtaining and transmitting orders, are bound by notice to Goodwin in every matter coming within the scope of these duties.

[2, 3] I concur, however, in the view of Mr. Justice BIJUR that

the judgment should be reversed because of the erroneous and insufficient charge on the issue of accord and satisfaction. The plaintiff, after dispute with the defendants in regard to these transactions of Goodwin, received from the defendants a statement of the account and a check in full for balance, and she deposited this check without any direct communication with the defendants. By presenting this proof, the defendants concededly presented prima facie proof of accord and satisfaction. To meet this; the plaintiff produced the testimony of her husband that he used this check only after some conversation with the manager, Goodwin, in which Goodwin stated that the plaintiff's claim would be made good. If this conversation was held with Goodwin as the agent of the defendants and his statement was intended and was understood to be the defendants' promise, then of course the retention of the check by the plaintiff in reliance upon this promise would constitute no accord and satisfaction. In view, however, of the fact that the plaintiff's husband claims to have made the alleged protest to Goodwin when he knew that the dispute between plaintiff and defendants referred to misconduct of Goodwin as the defendants' agent, and of the further fact that Goodwin in that conversation concededly said "I" as well as "we" will make good, it is at least a question whether the plaintiff's husband was not, at the time, dealing with Goodwin individually, and not as the defendants' manager. This issue was never submitted to the jury, and it follows that the judgment should be reversed and a new trial ordered, with costs to appellants to abide the event.

SEABURY, J., concurs.

BIJUR, J. (concurring). The defendants were stockbrokers. They maintained a branch office in charge of one Goodwin as manager. Plaintiff carried on some stock speculations through the branch office, always signing her orders. On April 2, 1912, she signed and delivered to Goodwin, who in turn delivered it to defendants, the following letter:

"Cammann & Co.: This letter authorizes you to accept buying and selling orders for my account from Mr. Vincent Goodwin.
                              "[Signed]  Mrs. John Eng."

After Goodwin had, under the authorization of this letter, initiated a number of transactions, plaintiff claims that she went to him and said, "Mr. Goodwin, I want to stop the whole transaction, and I want my money back, whatever is left," aud he said, "All right," but she took no further steps to notify the defendants. Her action is based on a claim for a balance of her account which would have existed but for losses arising on transactions subsequently undertaken on her behalf by Goodwin. The question is therefore squarely presented whether her notice to Goodwin of revocation of his authority was notice to the defendants. I think it was not.

All evidence as to the scope of Goodwin's authority was excluded at the instance of plaintiff's counsel, she resting exclusively on his designation and position as "manager" of defendants' branch office.

As such he was, of course, not more than the manager of the defendants' business as conducted in that office. Indeed, such fragments of testimony as crept into the case indicated that his functions were limited; thus one of plaintiff's exhibits, a receipt for a small sum of money, contained the significant inscription:

"This is a temporary receipt, and must be followed by receipt *from main office.*"

All confirmations of plaintiff's orders for the buying and selling of stock, and all statements of account, emanated from the main office. It cannot therefore, to my mind, be successfully contended that the jury was at liberty to find that it was part of Goodwin's duties, or within the scope of his authority, to act as discretionary agent for customers who might desire to trade in stocks through defendants' house. When, therefore, the plaintiff appointed him her agent for that purpose, it was necessary to so notify the defendants in person and thus obtain their express or implied assent. That such notice was contemplated by her appears from the address of the letter she signed, and the evidence discloses that this letter was actually delivered to the defendants. It seems to follow quite plainly that if the appointment of Goodwin as her agent was ineffective until communicated directly to defendants, and insufficient if communicated to Goodwin alone, because outside of the scope of his representation of defendants, then equally the revocation of his authority was inadequate if communicated only to him and not brought home to the defendants in person.

Respondent cites Boyd v. Yerkes, 25 Ill. App. 527, a case almost precisely like the present one in its general outlines, where the court reached a contrary conclusion. But, so far as the opinion shows, the facts as to the agent's authority were there fully developed. Of this the court says:

"Notice to the agent is notice to the principal where connected with the subject-matter of the agency. * * * Here the subject-matter of Cutler's agency for appellees was *to direct* the sales and purchases of grain and stocks as orders were given by the customers, and the notice was therefore given, if given at all, in the very matter of the agency. The rule applies where the agent represents both parties at the same time. Bank of New Milford v. Town of New Milford, 36 Conn. 93."

In the case last cited, the Supreme Court of Errors of Connecticut held merely that where the cashier of a bank, who had embezzled some of its funds and was also treasurer of the town, gave to the bank an unauthorized obligation of the town, his knowledge of the invalidity of the town's obligation was the knowledge of the bank, since the entire transaction was one thoroughly within the scope of his powers as cashier of the bank.

The respondent contends, however, that even if a bare revocation of Goodwin's authority should be ineffective unless communicated to the defendants, nevertheless, her order to Goodwin should be construed as being an order to close out her account, which under ordinary circumstances would come within what may be assumed to have been his authority. This reasoning, however, merely seeks to evade the

issue. Plaintiff, having by formal notice to defendants appointed Goodwin her agent for specific purposes, could not revoke that authority, except substantially in the same manner.

There is a further element in the case, which alone would require a reversal of this judgment. Defendants set up an accord and satisfaction, and proved that plaintiff had received and deposited a check "in full for balance of account." They offered some evidence also going to show that prior to the sending, and certainly prior to the depositing, of this check the plaintiff's husband had, on her behalf, protested to defendants concerning the alleged unauthorized transactions —evidence on which they claim to be entitled to have the jury find that there was an actual dispute between the parties at the time of the payment in accord. On the other hand, plaintiff introduced testimony of a conversation with Goodwin after the receipt of the check, in which he is alleged to have said that plaintiff should deposit the check, and either "we" or "I," or both, would adjust the matter later.

In this state of the record, it is evident that the defendants were entitled to have the jury charged fully concerning the law of accord and satisfaction. This was not done by the learned judge below in his main charge, and the requests of defendants' counsel in that regard were refused, to which refusal due exception was taken.

Judgment reversed, and a new trial granted, with costs to appellants to abide the event.