THE BRADFORD COMPANY et al., Appellants, v. JAMES H. DUNN, Respondent.

462

(Argued March 20, 1929; decided April 16, 1929.)

*George H. Engelhard* for appellants. The power of attorney, exhibited to the Bradford Company before the contract was finally executed, held out the agents as authorized jointly to sign contracts for the purchase of horses. Under a reasonable construction, and in the light of the circumstances then known to the Bradford Company's officers, that power meant that the agents were authorized to make, by their joint signatures, a

contract binding on the defendant and that the Bradford Company need not inquire of the principal whether he approved of the terms agreed upon by his agents. (*Porges* v. *U. S. Mortgage & Trust Co.*, 203 N. Y. 181; *Very* v. *Levy*, 13 How. [U. S.] 345; *Evans* v. *Frenn*, 93 App. Div. 346; *Winne* v. *Niagara F. F. Ins. Co.*, 91 N. Y. 185; *Matter of McArthur*, 173 App. Div. 517; *Sarasohn* v. *Kamaiky*, 193 N. Y. 214; *First Nat. Bank of Trenton* v. *Gary*, 63 Mo. 33; *Netherland* v. *Dunn*, N. Y. L. J. Dec. 27, 1917.) None of the cables introduced in evidence by the defendant were shown to have been communicated to the Bradford Company. They were, therefore, purely private instructions from principal to agent and could not be used by the defendant to limit as against the Bradford Company the scope of the written power exhibited to the Bradford Company. Moreover, they do not, in fact, contain any limitation on the agents' power to contract. On the contrary, they show defendant's realization that he would be bound by a contract signed by his agents. (*N. Y. Car Advertising Co.* v. *Morris Park*, 222 N. Y. 552; *Lowenstein* v. *Lombard*, 164 N. Y. 324; *Newman* v. *Lee*, 87 App. Div. 116; *Diamond Soda Water Co.* v. *Hegeman*, 74 App. Div. 430.)

*C. Frank Reavis, Jr.*, and *Martin D. Jacobs* for respondent. The language of the power of attorney in itself and particularly when considered in the light of the context of the power and of the unusual circumstances surrounding its execution, relates merely to the " form and manner " of executing contracts whose terms had been approved and not to the inherent power to make a contract. Such a construction effectuates the purposes of the agency. (*Catholic Foreign Mission Society* v. *Oussani*, 215 N. Y. 1; *Craighead* v. *Peterson*, 72 N. Y. 279; *Porges* v. *U. S. Mortgage & Trust Co.*, 203 N. Y. 181; *Jacoby & Co.* v. *Paysom & Adams*, 91 Hun, 480; *Esdaile* v. *La Nauze & Heyland*, 1 Y. & C. 394; *Stokes*

v. *Dewees,* 24 Penn. Supp. 471; *Henry* v. *Lane,* 128 Fed. Rep. 243; *U. S. National Bank* v. *Herron,* 73 Ore. 391; *Golinsky* v. *Allison,* 114 Cal. 458; Story on Agency, § 68; *Hayes* v. *Ammon,* 90 App. Div. 604; *Bowen* v. *Woodfield,* 33 Ind. App. 687; *Johnson* v. *American Freehold Land Mortg. Co.,* 111 Ga. 490.) The context of the power of attorney and the unusual circumstances attending this execution show that the respondent merely intended to delegate ministerial tasks to his agents. (*Dunning & Smith* v. *Roberts,* 35 Barb. 463; *Trevor* v. *Wood,* 36 N. Y. 307; *Johns* v. *Obscanska, Zalozna, Karline,* 212 N. Y. Supp. 557; *Selma Savings Bank* v. *Webster County Bank,* 182 Ky. 604; *Dykens* v. *Townsend,* 24 N. Y. 57; *Moody* v. *Smith,* 70 N. Y. 598; *Cohen* v. *Walker & Co., Inc.,* 192 N. Y. Supp. 228; *Union Bag & Paper Corp.* v. *Bischoff,* 255 Fed. Rep. 187.) The cables put in evidence by the appellant as " aiding in the construction of the power of attorney " and those offered by the respondent affirmatively show that the agents had no authority to make the contract put in evidence, but that, to the contrary, respondent retained full control of, and direction over, the negotiation and making of any contract for horses, and that the respondent refused to authorize a provision for the confirmation of the purchase price by a banker, as set forth in the alleged contract. (*Apostalico* v. *Fish,* 168 N. Y. Supp. 524; *Gratan* v. *Metropolitan Life Ins. Co.,* 92 N. Y. 274; *Lexow* v. *Belding,* 72 App. Div. 446; *Bendingen Manufacturing Co.* v. *Royal Trust Co.,* 90 App. Div. 267; *Warfield* v. *Wire Wheel Corp.,* 107 Misc. Rep. 528; 191 App. Div. 899.)

LEHMAN, J. The plaintiff has brought an action for damages caused by breach of a contract dated May 5th, 1915, and annexed to the complaint. The defendant denied that he entered into the contract. The instrument was signed on behalf of the Bradford Company by

its vice-president, and was signed in behalf of the defendant, James H. Dunn, by E. E. Borcham and Frederick R. Swift, attorneys in fact. At the trial the court sustained the defendant's objection to the introduction in evidence of the alleged contract on the ground that the plaintiff had failed to show that the defendant had authorized its execution.

On April 22d, 1915, the defendant, in London, executed a power of attorney which authorized Ernest Eugene Borcham and Frederick R. Swift " to jointly sign contracts and agreement relating to the purchase of horses and sign or endorse all or any Bills of Lading and other shipping documents relating to the carriage of horses in the United States of America or elsewhere made out in the name of the undersigned   *   *   *   and jointly to do everything relating to such Bills of Lading and other Documents as they may think necessary or desirable," etc.

The agents named in the power of attorney exhibited it to the Bradford Company. Then they signed and delivered the contract upon which the plaintiff sues. Under the terms of the contract the defendant agreed to purchase twenty thousand horses from the Bradford Company, to be paid for by the National City Bank against delivery of railroad bills of lading. The defendant agreed that the bank would confirm in writing that it would pay the purchase price against delivery of such documents. Each party also agreed to furnish to the other a bond in the sum of $250,000 for the performance of the contract. The contract recites that the defendant had agreed to furnish twenty thousand horses to be delivered to the government of France, and the Bradford Company agreed to deliver horses which would conform to certain printed specifications for French horses and which shall have passed the inspection required by the French government. In certain contingencies the defend-

ant agreed to purchase, and the Bradford Company agreed to sell and deliver, twenty thousand additional horses for the use of the government of France.

The defendant, though he gave to designated agents power " to jointly sign contracts or agreements relating to the purchase of horses," now maintains that the power to " sign " a contract does not include the power to enter into a binding contract in his behalf. It is said that a contract cannot be " signed " until there has been agreement upon its terms, and that the power to sign a contract does not include the power to agree upon its terms or to deliver the contract after it has been signed as to the authoritative embodiment of terms previously agreed upon. Plainly, such a narrow construction of the language of the power would defeat its apparent purpose. In effect, the defendant is contending that though he authorized his agents to sign contracts for him, he did not intend to bestow upon them any power to bind him by their signature. Unless the signing is intended to evidence a completed contract and to embody its terms, it is a futile act. All prior negotiations become embodied in the writing when both parties sign a written contract. The defendant in England bestowed upon his agents power to attest by their signature a contract made in his behalf in the United States. No other meaning can fairly be given to the language of the power of attorney. He might instruct his agents as to the circumstances under which they might exercise the power, but he chose to place no limitation upon their apparent power to sign contracts or agreements relating to the purchase of horses. He clothed his agents with apparent power to determine what contracts or agreements they would sign. He assumed the risk that they might sign contracts into which he would not be willing to enter. Having bestowed upon them an apparently unlimited power to attest in his behalf by their signature the terms of a written contract, he cannot now urge that he had not approved of

the terms, or that he did not intend that the signature which they were authorized to append to the contract should have the usual effect of embodying in the writing a completed agreement.

The written power of attorney signed by the defendant and exhibited to the Bradford Company was sufficient evidence of the authority of the defendant's agents to sign the contract for the purchase of the horses, as a written agreement binding upon the defendant. The burden then rested upon the defendant to produce evidence which would show not only that the defendant had limited the authority conferred by the power of attorney but that such limitations were brought to the attention of the Bradford Company.

*Catholic Foreign Mission Society* v. *Oussani* (215 N. Y. 1, 5) holds nothing to the contrary. A corporation was organized under the Membership Corporations Law (Cons. Laws, ch. 35) which contained a provision that all sales and purchases of land should be authorized by a two-thirds vote of the directors. A resolution, adopted by the board, not in view of any particular transaction, not as a power of attorney to be exhibited, but merely as an incident of the internal management of the corporation, was to the effect that " the president has authority to sign and execute all documents." We held that this did not mean that he could negotiate a sale of land. To have held otherwise would have been to abrogate the statute, and give him all the powers vested in the board. There was no evidence that the other party to the contract had seen the resolution, or acted on the faith of it.

Before the contract was signed by the defendant's agents, the agents sent to the defendant and received from him a number of cablegrams concerning the purchase and shipment of horses to meet the defendant's engagements to the government of France. After the trial judge ruled that the language of the power of attorney was not sufficiently broad to confer upon the agents

named therein authority to bind the defendant, the plaintiff introduced in evidence four of these cablegrams in order to show that the defendant understood and intended that the agents should have such authority. Then the defendant introduced in evidence other cablegrams that had passed between the same parties which might explain the cablegrams introduced by the plaintiff. It was not shown that any of these cablegrams were shown to the Bradford Company before the contract was signed.

These cablegrams are sufficient to remove any possible doubt that the defendant intended that the language of the power of attorney should be given its ordinary meaning, and that the signature to a contract by his agents in the United States should result in the creation of a contract binding on him. There are, it is true, some expressions in the cablegrams from the defendant which might be considered as instructions to his agents to consult him before they actually signed any contract. It is at least doubtful whether such instructions were intended to limit the authority of the agents if, nevertheless, they chose to sign a contract without first obtaining from the defendant approval of its terms. In the absence of evidence that the cablegrams were shown to the Bradford Company, even express limitations contained therein could not affect the plaintiff. Parties dealing with the agents might rely upon the written power of attorney exhibited to them.

After the contract was signed, the defendant seems to have objected to the terms of the contract which called for a confirmation by the bank that it would pay for the horses, and also for a surety bond. Now the defendant urges that such terms are so extraordinary that even an agent with general authority to contract could not agree to them. A contract made here through agents with an individual in England calling for the sale and delivery of twenty thousand horses to be shipped in war time to the government of France is obviously an unusual contract,

but concededly the agents had authority to at least "sign" such a contract containing no unreasonable terms. We cannot say that the terms inserted in this unusual contract are on their face unreasonable or extraordinary.

For these reasons the judgment of the Appellate Division and that of the Trial Term should be reversed and a new trial granted, with costs to abide the event.

CARDOZO, Ch. J., POUND, CRANE, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgments reversed, etc.