MICHAEL J. BOSAK, JR., Respondent, *v.* MORRIS L. PARRISH et al., Individually and as Copartners under the Name of PARRISH & COMPANY, Appellants.

(Argued October 22, 1929; decided November 19, 1929.)

*William F. Unger* and *Daniel J. Colton* for appellants. Assuming that the plaintiff did inform defendants' employee that he revoked his authority, the alleged notice, not communicated to the defendants, is, as a matter of law, not binding upon them. (*Hermann* v. *Niagara Fire Ins. Co.*, 100 N. Y. 411; *Healy* v. *Insurance Co.*, 50 App. Div. 327; *Poel* v. *Brunswick-Balke-Collender Co.*, 159 App. Div. 365; *Cohen* v. *Goldstein*, 128 N. Y. Supp. 69; *Hatch* v. *Taylor*, 10 N. H. 538; *Claflin* v. *Lenheim*, 66 N. Y. 301; *McConnell* v. *Hellwig*, 190 App. Div. 244; *Henry* v. *Allen*, 151 N. Y. 1; *Bienenstok* v. *Ammidown*, 155 N. Y. 47; *Reeves & Co.* v. *Lewis*, 25 S. D. 44.)

*Edward Ward McMahon* for respondent. The notice by plaintiff to defendants' employee of the revocation of the power of attorney was notice to defendants, and the acts of their employee in thereafter trading in the account against the specific instructions of plaintiff and without his authority are binding on defendants and not on plaintiff and plaintiff is, therefore, entitled to repudiate all trades in the account after December 31, 1924, except those that he specifically authorized; and upon the repudiation of those transactions he is entitled to the judgment rendered. (*People* v. *Sugarman*, 216 App. Div. 217; *Eng.* v. *Camman*, 85 Misc. Rep. 27; *McConnell* v. *Helwig*, 190 App. Div. 244; *Boyd* v. *Yerkes*, 25 Ill. App. 527; *Bank of New Milford* v. *Town of New Milford*, 36 Conn. 93; *Deyo*

v. *Hudson*, 174 App. Div. 746; *Birkett* v. *Postal Telegraph-Cable Co.*, 107 App. Div. 115; 186 N. Y. 591.) The oral revocation of the power of attorney by plaintiff to defendants' employee was sufficient. (*Frazier* v. *Cox*, [Ky.] 125 S. W. Rep. 148; *Randall* v. *Peerless Motor Car Co.*, 212 Mass. 352; *Glover* v. *Ames*, 8 Fed. Rep. 351; *Jacksonville Terminal Co.* v. *Smith*, 64 So. Rep. 354; *Copeland* v. *Mercantile Ins. Co.*, 6 Pick. [Mass.] 194; *Brookshire* v. *Brookshire*, 30 N. C. 74; *Bank of United States* v. *Davis*, 2 Hill, 451; *Hiern* v. *Mill*, 13 Ves. 120; *Warrick* v. *Warrick*, 3 Atk. 294; *Mechanics Bank of Alexandria* v. *Seton*, 1 Pet. 309; *Sutton* v. *Dilloye*, 3 Barb. 529; *Ingalls* v. *Morgan*, 10 N. Y. 178; *Myers* v. *Mutual Life Ins. Co.*, 99 N. Y. 1;. *Cox* v. *Pearce*, 112 N. Y. 637.)

CARDOZO, Ch. J. The controversy is one between stockbroker and customer.

Plaintiff, the customer, opened an account with the defendants, a firm of stockbrokers, in August, 1924. He came to them through the introduction of a friend who was employed in the defendants' business. This friend, one Medinger, was what is known as a " customers' man," with duties stated in the findings. These duties were to solicit customers for the defendants, his employers, to receive the orders of such customers for the purchase and sale of stocks, and to place them for execution. He had neither duty nor authority to act as the representative of the firm in making discretionary trades for the benefit of customers. The business of the partnership did not include such operations. If customers desired to confer discretionary authority on Medinger or any one else, there was need of a power of attorney to make the authority effective.

Such a power of attorney the plaintiff signed. Upon opening the account he put his hand to a document conferring upon Medinger full power to buy and sell in his behalf. There is a conflict of testimony as to the circumstances in which this document was signed. The

plaintiff says that he signed it upon the representation of the defendants' manager that it was only a matter of form. The trial judge found, however, that there was neither misrepresentation nor mistake. The defendants are found to have stated " that such a discretionary account as the plaintiff desired to open required that the plaintiff give a written power of attorney to Medinger, and that plaintiff lodge such power of attorney with the defendants." There can be no question under the findings that as long as this power of attorney stood unchanged and unrevoked, the defendants were protected in acting upon orders transmitted to them by Medinger in behalf of his principal, the plaintiff, as upon orders from the plaintiff personally.

Dealings then began with many and varied items. Plaintiff from time to time gave orders of purchase and sale to Medinger which the latter transmitted to the defendants. From time to time there came to the defendants orders which Medinger gave without conferring with his principal, though of this the defendants had no knowledge, nor was there anything on the face of such orders to distinguish them from others. Daily confirmation slips were made out, and also monthly statements of account, but the slips and the statements were handed to Medinger, who accepted delivery as the plaintiff's representative. The sweeping terms of the power gave notice to the brokers that they might recognize him as attorney in any and all dealings affecting the account. This is what they did. They had no dealings or communications with the customer directly, except at the close of the account to call on him for margin, but acted at all times through his appointed intermediary. There is testimony that now and again the plaintiff made inquiry of Medinger as to the notices and statements, adding that he would like to see them. He was put off with excuses till about the middle of November. He then received a statement for the quarterly period ending

November 1, and found several trades which his agent had made without telling him about them. According to his testimony, he notified the agent there and then that these trades were unauthorized and that in future no orders were to be given except with his assent. At the same time he decided to ratify the transactions and pocket the loss (about $7,000), saying nothing to the defendants to put them on their guard. About the middle of January, 1925, there came another quarterly statement up to the beginning of the year. Again there had been trades upon orders by the agent personally. Again the plaintiff ratified what had been done and pocketed the loss (about $10,000). According to his testimony, however, he notified the agent that " the thing must not occur again," and that if any such authority was understood to exist, it was then and there revoked. To the defendants themselves he said not a word.

Another quarterly period went by. In March, 1925, there came from the defendants a demand for additional margin, made necessary by new orders transmitted by the agent without the knowledge of the principal. The plaintiff refused the margin, and called upon the defendants to reinstate his account as of January 1, 1925, with allowance for later trades only when personally authorized. There followed this litigation with judgment for the plaintiff in upwards of $30,000. The trial court ruled that notice of revocation to Medinger was notice to the defendants, and that in accepting orders from him thereafter the defendants acted at their peril. The Appellate Division affirmed by a divided court.

We think the judgment is at variance with basic principles of agency. The power of attorney was lodged by the plaintiff with his brokers for the very purpose of accrediting the agent thereby appointed as his plenary representative. The brokers could safely act upon the authority thereby conferred until notified by the customer, the signer of the power, that it had been altered or withdrawn (*Bradford Co.* v. *Dunn*, 250 N. Y. 461;

*Claflin* v. *Lenheim*, 66 N. Y. 301; 1 Mechem, Law of Agency, § 623; American Law Institute, Restatement of the Law of Agency, §§ 159, 160, 220, 222). Notice was never given to them unless they are to be charged with notice to Medinger himself, the very agent accredited to them as speaking for the principal. To hold such notice adequate would be to frustrate the purpose of the power. In the argument for the plaintiff, much is made of the fact that Medinger, while representing the plaintiff, was employed by the defendants also. The fact, however, is unimportant unless his employment was of such a nature that acceptance of a notice of revocation might fairly be found to be within the scope of his authority (*Title G. & T. Co.* v. *Pam*, 232 N. Y. 441, 453; *In re Hampshire Land Co.*, [1896] 2 Ch. Div. 743; 2 Mechem, Law of Agency, § 1837). When this distinction is observed, such cases as *Eng* v. *Cammann* (85 Misc. Rep. 27 [App. Term]); *McConnell* v. *Hellwig* (190 App. Div. 244), and *Boyd* v. *Yerkes* (25 Ill. App. 527) are seen to be beside the mark. There notice of revocation was given by the customer to an appointee with discretionary authority, who was acting at the same time as the general manager of the branch office where the customer was dealing. The ruling was put upon the ground that notice to such a manager was equivalent to notice to the partners. Here, on the contrary, there is nothing in Medinger's position as a customers' man, with the duties already stated, that invested him with authority, actual or apparent, to accept in the firm's behalf a notice of revocation of a discretionary agency. This becomes the plainer when we ask ourselves what the situation would be if the power of attorney had run to a stranger to the business or to some other employee, and notice had been given to Medinger, and no one else, that the agency was ended. Plainly he would have been without authority as a customers' man merely, to charge his knowledge to the firm. If he could not accept notice of revocation of the authority of another, still less, as the

representative of the firm, could he accept it as to himself. A customers' man is to transmit those orders and those only to which the customer has assented. A power of attorney in the form adopted by the plaintiff wipes out the requirement of assent, and authorizes the appointee to act of his own motion. The one is a limited agency as the representative of the brokers. The other is a general agency as the representative of the customer, with notice to the brokers that the limitation, otherwise to be heeded, may be ignored as unimportant. To restore the limitation there must be warning to the partners who have shaped their course of dealing in reliance on its absence.

The judgment of the Appellate Division and that of the Trial Term should be reversed and a new trial granted, with costs to abide the event.

POUND, CRANE, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgments reversed, etc.