CLOTHIER v. BEANE et al.

No. 29370. Feb. 27, 1940.

Rehearing Denied Oct. 1, 1940.

*105 P. 2d 752.*

A. A. Davidson, of Tulsa, for plaintiff in error.

Chas. A. Coakley and R. B. McDermott, both of Tulsa, for defendants in error.

RILEY, J. The parties are herein referred to as in the trial court. Plaintiff, Fenner & Beane, is a copartnership engaging in the stock brokerage business, with a branch office in Tulsa, Okla. Defendant is a resident of Tulsa, and prior to December 9, 1937, the date when the transaction out of which this litigation arose, had been a customer or client of plaintiff.

About 9 o'clock a. m., December 9, 1937, defendant went into the office of plaintiff in Tulsa, and met V. P. Lary, an employee of defendant, who describes himself as: "The representative of the stock exchange house who comes in contact with the customers and accepts his orders and so forth." There defendant, after some conversation hereinafter set forth, gave Mr. Lary an order for defendant to purchase for him 100 shares of Chrysler Corporation stock at a stated price. The order was accepted and sent into the New York office. The market was too strong and the stock could not be bought at that price. Thereupon defendant raised the bid to 60⅛. The offer was still too low, and the bid was raised to 60½. Under that order plaintiff bought the stock for $60.25 per share.

Defendant at that time had no money or other security up with the plaintiff.

After the market closed for the day, defendant discovered that certain representations which were made by Lary to defendant before defendant placed the order for the stock were untrue, whereupon defendant notified Lary that he would not accept and pay for the stock. Three or four days thereafter, the stock having declined in value to about 55¼, plaintiff sold the stock, as for the account of defendant, and charged him with the loss resulting, amounting, with interest on the money advanced by plaintiff, to approximately $540.

About December 21, 1937, plaintiff presented defendant with a statement of account, showing a balance due plaintiff of $540.89; of this amount, $539.38 represented the loss on the Chrysler stock and $1.51 represented interest.

Defendant refused payment, and plaintiff commenced this action to recover said sum.

Plaintiff set forth in its petition two causes of action, that is, two counts. The first was as upon an account stated. The second was as upon open account.

Defendant had sometime prior thereto signed an agreement with plaintiff whereby he authorized plaintiff to act as his broker in the purchase of securities, commodities, or commodity contracts. Section 8 of the agreement provided:

"Reports of the execution of orders and statements of my accounts shall be conclusive if not objected to in writing or by telegram, the former within two days, the latter within ten days after transmittal to me by mail or otherwise."

It was apparently upon this provision of the contract that plaintiff based the first cause of action.

Defendant admitted receipt of the statement of account, but in his answer denied that he retained said statement without objection, and alleged that immediately upon its receipt he returned same with a statement of his objection endorsed thereon.

In his answer he further alleged:

"Further answering, defendant says that on December 9, 1937, while in the office of the plaintiffs in Tulsa, Oklahoma, watching the stock market reports, he was informed by V. P. Lary, an employee and agent of the plaintiffs, and through whom he had heretofore dealt with the plaintiffs, that he could buy, through the plaintiffs, stock of the Chrys-

ler Corporation for $60.50 per share and represented to the defendant that if said stock was purchased on said day it would carry a declared dividend of $3.00 per share, payable to the holder of the stock on said day; that is to say, that if said stock was not purchased on December 9, 1937, the purchaser would not be entitled to said declared dividend, but that said stock would be, in the parlance of the stock exchange, 'ex-dividend' the day following December 9, 1937. Defendant further says that upon receipt of such information, which was available to and in the possession of the plaintiffs, their employees and agents, and was unknown to defendant, and believing the said representation to be true, and in reliance thereon, defendant ordered the purchase of 100 shares of the said Chrysler stock at the price quoted on the New York Stock Exchange, not to exceed $60.50 per share; that about two hours later, on said day, he was advised by said V. P. Lary that a sale of said Chrysler stock on December 9, 1937, did not carry the right to dividends and that he was mistaken in so advising and making such representation to the defendant; that immediately upon being informed of the mistake made by the said V. P. Lary, the defendant countermanded his order of purchase, and gave oral notice to the plaintiffs, through the said V. P. Lary that he would not accept or pay for said stock and would not consider himself bound by the transaction, and whereupon the said V. P. Lary advised him that he would wire the New York office of the plaintiffs of his mistake; of all of which the plaintiffs, and their Tulsa manager, Ezra Pugh, had notice and knowledge, and acquiesced therein and assented thereto."

At the trial, after plaintiff and defendant had presented their evidence, the court sustained a demurrer to defendant's evidence and entered judgment for plaintiff, and defendant appeals.

The court made no findings of fact, and the journal entry does not indicate upon which theory of plaintiff the order and judgment was based.

There is no substantial conflict in the evidence.

The defendant sustained his objection to the account presented. Immediately upon receipt of the statement of account, defendant returned it with the following objection endorsed thereon:

"Frederick S. Todman & Co. AND FENNER & BEANE:

"The 100 shares of Chrysler Corporation Stock shown on statement as Purchased Dec. 13 and sold on December 15, 1937, was refused by me on account of misrepresentation by the Tulsa Fenner & Beane Office. This was fully explained in my letter to Mr. S. E. Pecot of the Fenner & Beane New York Office under date of December 13, 1937. Inasmuch as I refused to accept the stock I, naturally, did not order it sold for $55.25 per share. The stock was sold by order of Mr. Ezra Pugh of the Tulsa Office. I never owned the stock. I did not order it sold. I therefore deny liability for this charge of $539.38 (loss) and $1.51 interest.

"(Signed) C. B. Clothier."

Plaintiff could not recover as upon an account stated.

Did the court err in sustaining the demurrer to defendant's evidence?

Mr. Lary testified in part:

"Q. Isn't it a fact that at that time you told Mr. Clothier; you came to him and told him that if he bought Chrysler stock that day at the going market price, whatever it was, that it would carry a dividend of three ($3.00) dollars a share? A. That is correct. * * * Q. Sometime after nine o'clock? A. Yes, sir. Q. Now, wasn't Mr. Clothier back again that afternoon? A. Yes, sir. * * * A. Shortly after the market closed. * * * Q. What does ex-dividend mean? A. That means the stock selling the succeeding day would sell without dividend. * * * Q. But you did tell Clothier if he bought the stock on that day, on the 9th of December, that it would carry a three ($3.00) dollar dividend? A. Yes, sir. * * * Q. Now, didn't Mr. Clothier call your attention to the fact he did not notice on that tape anything about Chrysler stock? A. We were standing looking at it together at the time. Q. Did you observe it? A. Yes, sir. Q. Didn't he ask you to explain? A. He did not have to ask me. I went to looking right away when I didn't see it show up. Q. Where did you look? A. There is a book in our office that has corporation records

published by Standard Statistics, among which is a record showing the dividends coming up in months to come that have been declared by corporations. Q. You have all of that information in the office? A. Yes, sir, in the office. Q. You went to look at the book, did you? A. Yes, sir. Q. What did you find? A. I found it was ex-dividend about a month before. Q. About a month before? A. Yes, sir. Q. So the stock that Clothier bought did not carry any dividend at all? A. Yes, sir, that is right. Q. And you told him he could not get it? A. That is right."

Defendant's testimony was substantially the same on that question. Defendant also testified that after he learned that the stock bought by plaintiff did not carry the $3 per share dividend and Mr. Lary had so informed him, he said to Mr. Lary:

"A. I said, 'That puts a different picture on this sale'; that I would not take the stock."

He also testified in part:

"Q. Did you ever communicate those facts, as you have testified here, to Fenner & Beane? By letter or otherwise? A. Yes, sir, I did."

Counsel for plaintiff admitted receipt of the letter in evidence. It reads:

"Tulsa, Okla., December 10th, 1937.

"Fenner & Beane,
    "National Bank of Tulsa Building,
    "Tulsa, Oklahoma.

"Gentlemen:

"Yesterday, December 9, 1937, I placed an order with your Mr. V. P. Lary, for the purchase of one hundred shares of stock in the Chrysler Corporation at a price of $60.50 per share. This order was filled at the price of $60.25. This order to purchase was made after and in consideration of Mr. Lary's assurance to me that the stock of said corporation would go 'ex-dividend' today, December 10th, in the amount of three dollars per share, and that the three dollars per share, or three hundred dollars, would be paid to me due to the fact that I had purchased before the stock had gone ex-dividend. I happened to be in your office at the time the market closed and shortly thereafter the tape carried the names and amount of the dividends on stocks which would go 'ex-dividend' the following day

or December 10, 1937. I noticed that the name of the Chrysler Corporation was not on this list and I immediately called this fact to Mr. Lary's attention. He immediately consulted his book and stated to me that he had been mistaken; that the dividend was payable on that date instead of being ex-dividend on that date and that I would, therefore, not be entitled to the $300.00 dividend. I immediately advised Mr. Lary verbally, that I would not be bound by my order to purchase, in the circumstances.

"Mr. Lary advised me today that he had wired your New York office advising them of his mistake in making the statement to me, before I placed the order to purchase, and I would get the $3.00 per share dividend if I purchased the stock December 9, 1937.

"I am sorry this matter had turned out the way it has and trust you may be able to cancel the transaction."

It was then admitted that on December 13, 1937, defendant wrote Mr. Pecot, manager for Fenner & Beane, at their office in New York, enclosing an exact copy of the letter he had mailed their office in Tulsa on the 10th.

The question of defendant's liability in this case appears to depend upon the rather close question of whose agent Mr. Lary was in making the statements he admitted having made to defendant at the time defendant placed his order for the 100 shares of stock.

Mr. Lary, as stated above, testified that he was "With Fenner & Beane. Customer's man." When asked to tell the jury "what a 'customer's man' is," he answered, "Representative of the stock exchange house who comes in contact with the customer and accepts his orders and so forth."

A "customer's man" has been defined as including:

"All employees who are regularly engaged in the solicitation of marginal business or the handling of customers' accounts, or who advise with customers about the purchase and sale of securities." Meyer on Stockbrokers and Stock Exchange, sec. 120, p. 482.

In Bosak v. Parrish, 252 N. Y. 212, 169 N. E. 280, it is said:

"A 'customer's man' is to transmit those orders and those orders only to which the customer has assented * * * a limited agency as the representative of the brokers."

There is no evidence in this case as to the extent of, or limitation of, the authority of a "customer's man."

From the testimony of the witness Lary, there is a permissible inference that he was the employee of plaintiff engaged primarily in the solicitation of commission business in securities for his employer. As such it would be within the apparent scope of his authority to make representations to prospective customers concerning the desirability of certain stocks as an investment. This he may have done concerning Chrysler stock in his conversation with defendant. If in so doing he was acting as the agent and representative of plaintiff, his representations were the representations of plaintiff. But an employee of a broker may, in any particular matter, be the agent of the customer. Meyer's Stockbrokers and Stock Exchange, sec. 121, p. 383; Bosak v. Parrish, supra; Small v. Housman, 208 N. Y. 115; Minor v. Beveridge, 141 N. Y. 399, 36 N. E. 404.

A broker may, at certain stages and in certain matters going to the consummation of a transaction, be the agent for one party, and at other stages and in other matters connected with the consummation of the transaction, be the agent of the other party. Henken v. Schwicker, 174 N. Y. 298.

In the absence of any facts showing authority to act for the customer, the broker's employee will be considered as the agent of the broker.

In such case, if a loss is occasioned through the employee's misconduct, the broker and not the customer must sustain it. Meyer on Stockbrokers and Stock Exchange, sec. 121, p. 484. It follows that if the employee has actually been authorized to act as the customer's agent, the loss arising from his misconduct must fall upon the customer.

It would seem that if defendant approached the customer's man and requested information on whether Chrysler Corporation common stock carried with it a dividend if purchased on December 9, 1937, and if so, how much, and desired this information in order to determine whether he would buy on that day, Lary was the agent of defendant seeking the information, and any mistake he made concerning such facts was the mistake of defendant's agent.

But if plaintiff's employee approached defendant and informed him that the stock would carry a dividend of $3 per share if bought that day, as an inducement for defendant to buy through plaintiff as a broker, then he was not acting as defendant's agent in the matter and any mistake he made was the mistake of plaintiff. On this question the evidence is not conclusive.

As to the particular circumstances under which the representations were made, Mr. Lary testified:

"A. Mr. Clothier and I have discussed stocks for the last many years. Who broached the subject of Chrysler stock, I don't know. I would not know whether he broached Chrysler as the subject of conversation or whether I did. I am inclined to think Mr. Clothier did. As to his placing the order definitely after our discussion, he told me to buy the stock, but whether it was upon my recommendation or not, I don't know. I know definitely I told him the stock would carry the dividend. Q. Did you at that time make an investigation as to whether or not the stock carried the dividend? A. I attempted to. I thought I had. Q. What did you do? A. The book that carried the dividend record, as I explained, was on the back of my desk, and when I looked at it—they give those things numerically. December 10th would be shown as 12-10. I read that 11-12, which means November 12th as 12-11 which is December 11th. In other words, I transposed my figures in reading it."

Concerning the same matter defendant testified:

"A. Well, either on my way to or from the bank, I stopped in, as was my habit, to see the quotations on the board and Mr. Lary was lined up along the desk,— the customers' men,—three or four of them, and I stopped at Mr. Lary's desk

and we talked about stocks a little bit and he said, 'I will tell you Chrysler is a good buy today and if you buy it today you will get the three ($3.00) dollar dividend.' I thought about it a little while and I placed my order. * * * Q. Did Mr. Lary's statement to you that the stock would carry a dividend—A. Yes, sir. Q. Have any influence on you in placing the order? A. Yes, sir. Q. Did you rely on that statement in giving the order? A. Yes, sir, I did. Q. Would you have bought that stock except for that statement? A. I would not."

The evidence is insufficient to show, as a matter of law, that Lary was acting as the agent of defendant in said matter.

As to the right of a customer to regard and treat transactions of his broker as a nullity under certain circumstances, the general rule, which appears to be borne out by the authorities, is stated in Meyer on Stockbrokers and Stock Exchange, sec. 135, p. 549, as follows:

"If the execution of the order is at variance with the customer's instructions or in contravention to the broker's legal duties, the customer may, at his election, treat it as a nullity, and regard his account as being in the same state as if there had been no execution at all. * * * In all cases of this character the customer, if he elects to repudiate, is entitled to immunity from liability to the broker."

This rule applies only to the right to repudiate as between the customer and broker.

As between customer and broker the right of the customer to repudiate may be exercised whenever facts come to the customer's knowledge, regardless of how long that may be after the execution has been made, even at the trial, if knowledge of the facts is first acquired at that time. This right is unaffected by whether the customer has sustained a loss. Meyer on Stockbrokers and Stock Exchange, p. 550.

The record fairly discloses that the stock purchased as of defendant's account was not of the character represented by Lary. Under the above rule, defendant was entitled to repudiate upon learning the facts without regard to whether or not he suffered a loss, provided it be found that Lary was not defendant's agent in making the investigation and representations. That question was at least for the jury. It follows that the court erred in taking the case from the jury and entering judgment for plaintiff.

The judgment is reversed and the cause is remanded, with directions to grant defendant a new trial.

WELCH, V. C. J., and OSBORN, CORN, and DAVISON, JJ., concur.