PHYLLIS SPATH, APPELLANT, V. HAMILTON H. MORROW ET AL., APPELLEES.

115 N. W. 2d 581

Filed June 15, 1962.  No. 35242.

Tesar & Tesar, for appellant.

Sidner, Lee, Gunderson & Svoboda, for appellees.

Heard before SIMMONS, C. J., MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ., and CHADDERDON, District Judge.

BOSLAUGH, J.

This is an appeal in an action for malpractice. The amended petition alleged that the plaintiff was hospitalized at Fremont, Nebraska, on July 10, 1951, for the delivery of a child; that the plaintiff had been under the care of Dr. Carl H. L. Stehl; that Dr. Stehl referred the plaintiff to his agent, the defendant Dr. Dorwin B. Wengert, in accordance with an arrangement whereby Dr. Wengert would care for the patients of Dr. Stehl while Dr. Stehl was absent from the county; that Dr. Wengert, as agent for Dr. Stehl, retained the defendant Dr. Hamilton H. Morrow to assist in the delivery; that in assisting with the delivery Dr. Morrow acted as an agent for Dr. Stehl, knew that the plaintiff was originally a patient of Dr. Stehl, and that Dr. Stehl was absent from the county; that following the delivery and while suturing the plaintiff, the defendants broke a suture needle and a part of the needle was left in the soft tissue of the left perineum in the plane of the symphysis; that the defendants should have known that a part of the needle was left in the body of the plaintiff but negligently failed to discover and remove the needle and failed to disclose to the plaintiff that a part of the needle had been left in her body; that the defendants had a continuing duty to discover and remove the needle and their failure to do so was a fraudulent concealment and continuing negligence and a failure to complete the operation; that immediately after the delivery plaintiff had difficulty and disability caused by the presence of the needle; that Dr. Stehl resumed the care of the plaintiff 1 week after the delivery and she continued

under his care until June 13, 1960, when Dr. Stehl informed the plaintiff that the needle was in her body; that the needle was removed on January 23, 1961; that the plaintiff did not or through the use of reasonable diligence could not discover the presence of the needle until she was informed of the fact by Dr. Stehl; that the plaintiff believed, relied, and acted on the representations of Dr. Stehl as to the cause of her difficulty and disability; and that the plaintiff was damaged as a result of the negligence of the defendants.

The defendants filed separate general demurrers which alleged that the action was barred by the statute of limitations. The demurrers were sustained. The plaintiff elected to stand upon her amended petition and the action was dismissed. The plaintiff has appealed from the judgment dismissing the action.

The issue presented by the appeal is very narrow. The delivery is alleged to have occurred on July 10, 1951. The plaintiff is alleged to have not discovered or have been able to discover the presence of the needle in her body until June 13, 1960. The action was commenced on May 29, 1961. The statute requires that an action for malpractice be brought within 2 years after the cause of action shall have accrued. § 25-208, R. R. S. 1943. The question to be determined is when the cause of action accrued.

The general rule is that a cause of action accrues and the statute of limitations begins to run when the aggrieved party has the right to institute and maintain a suit. Dewey v. Dewey, 163 Neb. 296, 79 N. W. 2d 578. There are, however, many exceptions to this general rule.

In Williams v. Elias, 140 Neb. 656, 1 N. W. 2d 121, the plaintiff alleged that on April 4, 1938, he fractured the laminae of the fifth lumbar vertebra and injured the sacroiliac joint and surrounding muscles and tendons; that the defendant physician incorrectly diagnosed his injury as lumbago and failed to properly treat him for

his injuries; that the defendant physician continued to treat him until August 15, 1938, when he was hospitalized at Omaha, Nebraska, examined, X-rayed, and the nature of his injuries ascertained and treated; and that as a result of the improper diagnosis and treatment, his spinal column and sacroiliac joint became deformed, stiff, and enlarged and the left sciatic nerve impinged. This court held that the statute of limitations did not commence to run until August 15, 1938, the date that the treatment by the defendant physician ended.

The defendants contend that the rule announced in the Williams case is applicable here and that the statute of limitations commenced to run in this case on or about July 17, 1951, the date on which Dr. Stehl is alleged to have resumed the care of the plaintiff. This would result in the plaintiff's cause of action being barred nearly 7 years before it is alleged that she was informed as to the cause of her difficulty following the delivery. We do not believe that this is what the Legislature intended.

The statute of limitations is a statute of repose; it prevents recovery on stale demands. In re Estate of Anderson, 148 Neb. 436, 27 N. W. 2d 632. The statute is enacted upon the presumption that one having a well-founded claim will not delay enforcing it beyond a reasonable time if he has the right to proceed. The basis of the presumption is gone whenever the ability to resort to the courts is taken away. Lincoln Joint Stock Land Bank v. Barnes, 143 Neb. 58, 8 N. W. 2d 545. The mischief which statutes of limitations are intended to remedy is the general inconvenience resulting from delay in the assertion of a legal right which it is practicable to assert. 34 Am. Jur., Limitation of Actions, § 10, p. 20. If an injured party is wholly unaware of the nature of his injury or the cause of it, it is difficult to see how he may be charged with a lack of diligence or sleeping on his rights.

The Supreme Court of Pennsylvania recently com-

mented upon the unusual situation of a patient who has a foreign object left in his body by mistake. In Ayers v. Morgan, 397 Pa. 282, 154 A. 2d 788, the plaintiff alleged that he did not know that the defendant surgeon had left a metallic gauze sponge in his abdomen until it was discovered there 9 years later. In holding that the cause of action was not barred by the statute of limitations the court said: "Did the laws of nature prevent Ayres from ascertaining what was causing the pain in his abdomen? Certainly he could not open his abdomen like a door and look in; certainly he would need to have medical advice and counsel; certainly he would have to be dependent upon those who with appropriate instruments and devices could pierce the wall of flesh which hid from his own eyes the cause of his wretchedness."

The statutes of New Jersey require that an action for malpractice shall be commenced within 2 years after the cause of action shall have accrued. In a recent case, Fernandi v. Strully, 35 N. J. 434, 173 A. 2d 277, the plaintiff alleged that the defendant surgeon negligently left a wing nut from a retractor in his body. The Supreme Court of New Jersey held that the cause of action accrued when the plaintiff knew or had reason to know about the foreign object and the existence of the cause of action based upon its presence. The court observed that foreign object malpractice cases present special considerations which set them apart from other cases. The court said: "They involve the confidential doctor-patient relationship, the negligent failure to remove a foreign object during the course of the doctor's operation on his patient, the patient's total ignorance during the customary period of limitations of that fact or of circumstances suggesting it, the later discovery of the foreign object and the material harm it had done and the patient's expeditious institution of legal action thereafter. These circumstances eliminate the danger of a belated false or frivolous claim."

The cases which have considered this question are collected and discussed in a recent annotation appearing in 80 A. L. R. 2d 368, and in earlier annotations appearing in 144 A. L. R. 209 and 74 A. L. R. 1317. The cases from other states are in conflict and the defendants have cited a number of cases which support the ruling of the trial court in this case. However, we believe the following statement of the New Jersey court in Fernandi v. Strully, *supra*, is pertinent: "It is significant to us that in malpractice actions, particularly where, as here, they involve foreign objects, an ever increasing number of jurisdictions have used one just legal approach or other to avoid the truly harsh result reached in Weinstein."

In Williams v. Elias, *supra*, this court took note of the mutual confidence which is essential in the relation between physician and patient; that the physician should have a reasonable opportunity to correct the mistakes incident to even skilled surgery; and that the physician should not be harassed by premature litigation instituted in order to save the rights of the patient. Patients should not be encouraged to go from physician to physician in an effort to ascertain whether the diagnosis made and the treatment received are proper. Silence on the part of the physician for the statutory period should not destroy the rights of the patient.

We conclude that the cause of action in this case did not accrue until the plaintiff discovered, or in the exercise of reasonable diligence should have discovered, that a foreign object had been left in her body. The demurrers of the defendants should have been overruled. The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.