B. C. CHRISTOPHER & COMPANY, A PARTNERSHIP, APPELLANT, v. ALBERT D. DANKER, APPELLEE.

244 N. W. 2d 79

Filed July 14, 1976. No. 40516.

William J. Riley of Fitzgerald, Brown, Leahy, Strom, Schorr & Barmettler, for appellant.

Martin A. Cannon of Matthews, Kelley, Cannon & Carpenter, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, and CLINTON, JJ.

BOSLAUGH, J.

This case involves a controversy arising out of transactions in commodity futures. The plaintiff, B. C. Christopher & Company, is a member of the Chicago Board of Trade and operates a brokerage business in Omaha, Nebraska. The defendant, Albert D. Danker, was a customer of the plaintiff and maintained a commodity trading margin account with the plaintiff. On Friday, April 26, 1974, the defendant had no position in the market and his account with the plaintiff had a credit balance of $75.

On April 26, 1974, the defendant placed two trading orders by telephone with Douglas Brown, an employee of the plaintiff. The evidence is in conflict and there is a dispute between the parties as to the nature of these transactions. According to the defendant, he told Brown to buy 50,000 bushels of July soybeans at $5.80 for his account and sell 50,000 bushels of May soybeans at the market price, which was then about $5.90. Brown testified that the defendant ordered him to sell 50,000 bushels of July beans at $5.91. The sell order was not executed because July beans did not reach $5.91 that day.

The buy order was executed at $5.80. As the market price continued to fall a second buy order for 50,000 bushels of July beans was executed at $5.66. Late in the day an order to sell 100,000 bushels of May beans was executed. These last two transactions were made after the defendant learned his first sell order had not been executed, and were designed to avoid or minimize his losses.

The defendant also claims Brown failed to execute an order to sell 100,000 bushels of July beans at $5.73. Brown claims the defendant placed a stop sell order for 100,000 bushels of July beans at $5.73 which was not executed because a stop sell order can not be executed until the market reaches a higher price. July beans did not go above $5.73 that day, although there were some traded at $5.73. The defendant also claims he placed a later order to sell 100,000 bushels of July beans at any price over $5.70 which was not executed. Brown denies such an order was placed.

On the following Monday, April 29, the plaintiff demanded $21,000 from the defendant in order to hold his position in the market. The defendant then delivered a check for $21,000 to Brown. A buy order and sell order for 100,000 bushels each of May soybeans were executed on Monday for the defendant's account. There is no dispute concerning these transactions which resulted in a loss of $2,400 to the defendant.

On May 1, the $21,000 check was returned to the plaintiff as an insufficient fund check. The defendant told the plaintiff he could not make the check good. The plaintiff then closed out the account by buying 100,000 bushels of May beans for the defendant's account and selling 100,000 bushels of July beans. Brown advised the defendant he owed the plaintiff $13,025 as a result of these transactions and the defendant delivered a check in the amount of $13,025 to Brown. The defendant testified that he told Brown the check was no good at the time he delivered it to Brown. The defendant

then consulted a lawyer and stopped payment on both checks.

The petition alleged the defendant maintained a commodity trading account with the plaintiff, a copy of which was attached to the petition showing a $13,025 balance due the plaintiff. The petition further alleged the defendant had tendered the $21,000 check for credit to his account, and the $13,025 check in payment of the "stated amount" of his account, both of which were returned for insufficient funds. The petition then alleged there was $13,025 due the plaintiff and prayed for judgment in that amount.

The answer admitted the plaintiff was engaged in the brokerage business and that the cause of action arose out of business transacted in Nebraska. It contained a general denial and further alleged that the balance due as shown on the account alleged in the petition was not true and correct; that the plaintiff had not followed the defendant's instructions, and the defendant would have sustained no trading losses if the plaintiff had followed the defendant's instructions.

At the close of the evidence there was an instruction conference in chambers. The plaintiff took the position that under the allegations of the petition it could recover upon the theory of an open account, an account stated, or upon the $13,025 check, and contended that all three theories of recovery should be submitted to the jury. The trial court construed the petition as alleging an action upon an open account and submitted the case to the jury on that theory only.

The petition was susceptible to the construction placed on it by the trial court. Although the petition referred to a "stated amount," the petition pleaded the transactions in detail by incorporating a copy of the account in the petition. It was in the usual form of a petition alleging a cause of action on an open account. See, § 25-837, R. R. S. 1943; Moore v. Schank, 148 Neb. 228, 27 N. W. 2d 165. Most of the allegations in the petition

were surplusage if the plaintiff intended to sue on the $13,025 check.

Pleadings perform a useful and necessary purpose. They frame the issues upon which the cause is to be tried and advise the adversary as to what he is called upon to meet. Pinkerton v. Leonhardt, 184 Neb. 430, 168 N. W. 2d 272. A pleading should be construed with reference to the general theory upon which it proceeds, and should not be uncertain as to which of two or more theories is relied on. Fellers v. Howe, 106 Neb. 495, 184 N. W. 122.

Ordinarily, an account stated should be set aside if the case is to be tried on the original claims upon which it is based. Andrews Electric Co. v. Farm Automation, Inc., 188 Neb. 669, 198 N. W. 2d 463. Here the plaintiff elected to try the case upon the theory of an open account by producing testimony in its case-in-chief as to the transactions between April 26 and May 1. The defendant produced testimony concerning the same transactions and claimed he was not indebted to the plaintiff in any amount.

There was no dispute as to whether purchases and sales had been made for the defendant's account. The issue was whether the plaintiff had followed the defendant's instructions in regard to orders that were not executed. As a practical matter, the defendant's evidence, if believed, prevented a recovery by the plaintiff on any theory. See, McKinster v. Hitchcock, 19 Neb. 100, 26 N. W. 705; 6 Williston on Contracts, § 1684, p. 5236. We conclude there was no prejudicial error in submitting the case to the jury on the theory of an open account.

The plaintiff also objected to instruction No. 13 which was as follows: "You are instructed that, where the stockbroker or commodities broker fails to execute the customer's orders or executes them improperly or at variance with the instructions given, the customer may rescind his agreement or treat the transaction as a

nullity, and the customer may recover back any money he has deposited with the broker, regardless of whether or not the customer has sustained a loss. You are further instructed that, if the customer elects to, and does, repudiate such a transaction, he is entitled to immunity from liability to the broker; and, the customer has the right to repudiate a transaction whenever facts come to his knowledge or attention showing that the transaction took place contrary to his instructions, regardless of how long that may be after the transaction occurred."

The instruction appears to have been based upon language appearing in 12 Am. Jur. 2d, Brokers, § 121, p. 868, and is supported by Clothier v. Beane, 187 Okla. 693, 105 P. 2d 752; Baldwin v. Peters, Writer & Christensen, 141 Colo. 529, 349 P. 2d 146; Krinsky v. Whitney, 315 Mass. 661, 54 N. E. 2d 36.

Although the instruction given may have been somewhat broader than was required under the facts in this case, we find no prejudicial error in the instruction. The trial court was required to instruct the jury as to the rights of the defendant if it found that the plaintiff had failed to execute the defendant's orders or had executed them improperly. The instruction given was a correct statement of the law so far as it was material to the issues in this case.

It is unnecessary to discuss the other assignments of error.

The judgment of the District Court is affirmed.

AFFIRMED.