DENNIS MOORE AND LOIS MOORE, APPELLANTS, V.
PUGET SOUND PLYWOOD, INC., APPELLEE.

332 N.W.2d 212

Filed April 8, 1983. No. 82-723.

Duane M. Katz, for appellants.

Gerald L. Friedrichsen of Fitzgerald, Brown, Leahy, Strom, Schorr & Barmettler, for appellee.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, and CAPORALE, JJ.

CAPORALE, J.

Dennis and Lois Moore, plaintiffs-appellants herein, brought an action in the municipal court of the city of Omaha for damages against Puget Sound Plywood, Inc., defendant-appellee, alleging that Puget Sound breached an implied warranty. The municipal court dismissed plaintiffs' petition and the District Court affirmed that action. In this appeal the Moores assign as error the holding that the period of limitations began to run on the date of delivery, and the finding and holding that the Moores failed to prove proper notice of the breach. Although we do not agree with the parties' and lower courts' analyses of the case, we do agree with the Moores' arguments of error and reverse the judgment of the District Court.

Puget Sound had manufactured certain lauan siding which the Moores purchased during the construction of their house in 1970-71. In October 1977 the Moores noticed some "problems" with its appearance. The problem, delamination, had gotten severe enough by 1979 that they began to investigate what could be done to remedy the situation. They first attempted to contact their supplier but found that it had gone out of business. Another lumber

dealer directed them to Rehcon, Inc., which had been engaged by Puget Sound, since at least December 1976, to make investigations and undertake remedial work for Puget Sound on homes which had delaminating siding. On March 13, 1980, Rehcon terminated its relationship with Puget Sound because of an "inability to develop a satisfactory working relationship." The record does not reveal that Puget Sound took any steps to make the public aware that Rehcon was no longer its agent, nor does it appear that Puget Sound appointed anyone else to represent it. On June 24, 1980, Mr. Moore complained to Rehcon about the subject siding. This action was filed on April 24, 1981. The president of Puget Sound testified that the particular species of lauan tree used by it in the making of the siding involved was not susceptible to being glued together with the resin which Puget Sound was then using. Accordingly, some of the lauan siding was defective in that it delaminated relatively quickly. In other words, it came apart. The parties agreed that the municipal court could take judicial notice that "generally siding, when it's put on, is supposed to take, last the life of the house." The evidence establishes that the damages are $4,550, the cost of remedying the defect by replacing the siding.

The Moores argue substantially to the effect that where a seller impliedly warrants the future performance of a product, the statute of limitations is extended until the breach is or should have been discovered. Puget Sound in essence argues that an implied warranty is by its very nature incapable of such extension, since the period of limitations must toll at tender of delivery, regardless of the purchaser's lack of knowledge of the breach. In our view an appropriate analysis of this case makes it unnecessary for us to determine at this time whether the period of limitations specified in Neb. U.C.C. § 2-725 (Reissue 1980) precludes recovery.

This analysis is required by reason of the opera-

tion of Neb. U.C.C. § 2-313(1)(b) (Reissue 1980) as delineated in *England v. Leithoff,* 212 Neb. 462, 323 N.W.2d 98 (1982), decided after the municipal court trial herein. That opinion foreshadows the outcome of this case. We held therein that an oral representation concerning the origin of goods, made in the course of a sale, constitutes an express warranty under § 2-313(1)(b), which provides, among other things, that any description of goods which becomes a part of the basis of the bargain creates an express warranty that the goods shall conform to the description. According to the parties, the description of the goods as "siding" carried with it the representation that it would last the lifetime of the house. Therefore, the requisite elements of § 2-313(1)(b) are present; that is, the description of the goods became a part of the bargain and created in the minds of the parties the expectation that the siding would last the lifetime of the house. Section 2-725(2) provides in part: "A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." The instant breach did not occur upon tender of delivery since, in light of the expectations of the parties, the warranty herein necessarily extended explicitly to future performance.

The case of *Grand Island School Dist. #2 v. Celotex Corp.,* 203 Neb. 559, 279 N.W.2d 603 (1979), relied upon by Puget Sound, is not factually apposite here. Therein, discovery could, and in fact did, occur shortly after completion of the construction project; that is, the plaintiff knew about the defect prior to the tolling of the period of limitations but failed to act until after it had tolled. In this case, discovery could occur at any time between installation and the "life" of the house. The Moores acted

within a reasonable period of time after they discovered the latent defect.

We recognize the Moores plead the legal conclusion that the warranty was an implied rather than an express one. However, the facts pled and the evidence adduced pursuant to those factual allegations establish otherwise. Pleadings frame the issues upon which a cause is to be tried and advise the adversary as to what he must meet. *B. C. Christopher & Co. v. Danker,* 196 Neb. 518, 244 N.W.2d 79 (1976). However, it is the facts well pleaded, not the theory of recovery or legal conclusions, which state a cause of action. *Blaha GMC-Jeep, Inc. v. Frerichs,* 211 Neb. 103, 317 N.W.2d 894 (1982); *Newman Grove Creamery Co. v. Deaver,* 208 Neb. 178, 302 N.W.2d 697 (1981). The facts well pleaded in this case served to put Puget Sound on notice of what it was called upon to meet; it was in no way misled by the word "implied."

The Moores' second assignment of error relates to the lower courts' holdings that they failed to prove proper notice to Puget Sound as required by Neb. U.C.C. § 2-607(3)(a) (Reissue 1980). That section provides that where a tender has been accepted, the buyer must, within a reasonable time after he discovers or should have discovered any breach, notify the seller of the breach or be barred from any recovery. We have held that a purchaser must plead that he gave timely notice of the breach. *Timmerman v. Hertz,* 195 Neb. 237, 238 N.W.2d 220 (1976). The Moores did so plead. The question is, then, whether the evidence supports that allegation. The June 24, 1980, written complaint to Rehcon was given within a reasonable time of the initial discovery in 1977 and the determination in 1979 that the problem was severe enough to warrant action. It is true that by the time of that complaint Rehcon no longer had any relationship with Puget Sound. However, that fact is not in and of itself determinative. *Webster v. Wray,* 17 Neb. 579, 24 N.W. 207 (1885),

*rev'd on other grounds* 19 Neb. 558, 27 N.W. 644 (1886), presented a situation wherein the defendant had put his son in charge of a ranch, allowed the son to buy and sell stock for him, and paid debts which the son had contracted, without objection. In an action by the plaintiff, who sought the payment of certain contracts from the defendant father, we observed that the proof failed to show that any notice of the alleged termination of the son as agent was given either generally or specifically. In holding the father responsible we said that while the rule is that an agent must act within the scope of his authority, yet when the agent's acts affect innocent third parties, the principal will be bound to the extent of the apparent authority conferred upon the agent. The teaching of *Webster* is that apparent authority may exist beyond termination of the principal-agency relationship when notice of the termination has not been given. In *Howe v. Provident Loan & Investment Co.*, 130 Neb. 469, 475, 265 N.W. 255, 258 (1936), we reiterated language from prior cases which said: " 'Where a principal has, by his voluntary act, placed an agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to perform a particular act, and therefore deals with the agent, the principal is estopped as against such third person from denying the agent's authority.

" 'Whether or not an act is within the scope of an agent's apparent authority is to be determined under the foregoing rule as a question of fact from all the circumstances of the transaction and the business.' " More recently, in *Wolfson Car Leasing Co., Inc. v. Weberg*, 200 Neb. 420, 264 N.W.2d 178 (1978), we said that apparent or ostensible authority to act as an agent may be conferred if the alleged principal affirmatively, intentionally, or by lack of ordinary care causes third persons to act upon the ap-

parent agency. Under the facts and circumstances of this case, Mr. Moore's notice to Rehcon was notice to Puget Sound. Each of the Moores' two assignments of error are meritorious. The judgment of the District Court is reversed and the matter remanded with directions that judgment be entered in favor of the Moores in the sum of $4,550.

REVERSED AND REMANDED WITH DIRECTIONS.