SUSAN K. CONDON, PLAINTIFF, V. A. H. ROBINS COMPANY, INC., DEFENDANT.
349 N.W.2d 622

Filed April 20, 1984. No. 83-471.

Jerold V. Fennell of Robert E. O'Connor & Associates, for plaintiff.

Ronald F. Krause of Cassem, Tierney, Adams, Gotch & Douglas, for defendant.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

KRIVOSHA, C.J.

This matter is presented to the court on a certification of a question of law from the U.S. District Court for the District of Nebraska, pursuant to the provisions of Neb. Rev. Stat. § 24-219 (Cum. Supp. 1982). The specific question certified to us by the federal court is as follows: Does the 4-year statute of limitations set forth in Neb. Rev. Stat. § 25-224(1) (Cum. Supp. 1982) begin to run on the date on which

injury or damage complained of occurs or when the person injured discovers the facts constituting the basis of the cause of action or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery?

If the question presented to us is whether the statute of limitations begins to run on the date on which the injury or damage "happens," whether known to the injured party or not, or when the injured party knows whom to sue, we believe the answer is neither time. We reach this conclusion because we believe, for reasons which we will detail hereafter, that a cause of action under the provisions of § 25-224(1) begins to run from the time the party entitled to bring the cause of action discovers, or in the exercise of reasonable diligence should have discovered, the existence of death, injury, or damage. While the date on which death occurs should usually be easy to determine, the date on which the injury or damage is discovered, or in the exercise of reasonable diligence could be discovered, may be more difficult. Furthermore, the date on which the statute of limitations under § 25-224(1) begins to run in regard to one particular injury or damage may not be the same as it is with respect to a further or different injury or damage occasioned by the use of or contact with the defective product.

Because evidence has not as yet been presented in the trial court and because this matter comes to the court as a certified question, the particular facts are neither available to us nor relevant in our determination of the legal question. We do, however, set out the statement of facts presented to us by the request for formal certification, solely for the reason that the statement may be helpful in discussing the legal principles.

On February 1, 1974, the plaintiff, Susan K. Condon, was professionally fitted with a "Dalkon Shield" intrauterine device manufactured by the de-

fendant, A. H. Robins Company. On or about August 27, 1976, after experiencing abdominal pain, Condon received medical care, and the Dalkon Shield was removed. In January of 1982, following an examination and the administration of diagnostic tests, a physician advised Condon that she had pelvic adhesions, which were probably caused by her use of the Dalkon Shield. While not set out in the statement of facts presented to us, the complaint filed by Condon alleges that by reason of Robins' negligence, Condon was required to be hospitalized and, in addition to other damages, has become permanently sterile.

The statute in question, § 25-224(1), provides: "All product liability actions, except one governed by subsection (5) of this section, shall be commenced within four years next after the date on which the death, injury, or damage complained of occurs." Subsection (5) is not material to our question as presented. Robins argues that the statute should be interpreted to mean that the statute of limitations begins to run when the injury or damage in fact first happens, even though the individual who has been injured or damaged may be totally unaware of the fact. In support of its position Robins argues that the Legislature was mindful of our decision in *Spath v. Morrow*, 174 Neb. 38, 115 N.W.2d 581 (1962), when it adopted § 25-224(1), and by omitting a specific reference to "discovery" in the subsection, the Legislature obviously intended that a discovery rule should not be applied. We do not believe, however, that an examination of either the legislative history surrounding the adoption of § 25-224(1) or the general applicable rules of law leads to the conclusion urged by Robins.

The purpose of permitting a discovery rule to be applied to a statute of limitations is founded upon what this court perceives as the logic of the matter. In *Spath* we examined the history underlying a stat-

ute of limitations, and noted at 41, 115 N.W.2d at 583-84:

> The statute of limitations is a statute of repose; it prevents recovery on stale demands. In re Estate of Anderson, 148 Neb. 436, 27 N.W.2d 632. The statute is enacted upon the presumption that one having a well-founded claim will not delay enforcing it beyond a reasonable time if he has the right to proceed. The basis of the presumption is gone whenever the ability to resort to the courts is taken away. Lincoln Joint Stock Land Bank v. Barnes, 143 Neb. 58, 8 N.W.2d 545. The mischief which statutes of limitations are intended to remedy is the general inconvenience resulting from delay in the assertion of a legal right which it is practicable to assert. 34 Am. Jur., Limitation of Actions, § 10, p. 20. If an injured party is wholly unaware of the nature of his injury or the cause of it, it is difficult to see how he may be charged with a lack of diligence or sleeping on his rights.

Additionally, if an individual is wholly unaware that he has in fact suffered injury or damage, it is difficult to see how he can file suit under a legal system which requires a party to allege and prove not only that another has breached a duty owed to the plaintiff but also that such breach has produced injury or damage. May one bring a cause of action if one neither knows nor, with the exercise of reasonable diligence, could know that he has been injured or damaged? We think not. The elements of actionable negligence are set out in 57 Am. Jur. 2d *Negligence* § 32 at 378 (1971). The author there notes:

> The primary wrong upon which a cause of action for negligence is based consists in the breach of a duty on the part of one person to protect another against injury, the proximate result of which is an injury to the person to whom the duty is owed. These elements of duty, breach,

and injury are essentials of actionable negligence. In the absence of any one of them, no cause of action for negligence will lie.

And at 57 Am. Jur. 2d, *supra* § 64 at 415, the author further notes:

A cause of action for negligence depends not only upon the defendant's breach of duty to exercise care to avoid injury to the plaintiff, but also upon damage or injury suffered by the plaintiff as a consequence of the violation of duty. Liability for negligence, of course, depends upon a showing that the injury suffered by the plaintiff was caused by the alleged wrongful act or omission of the defendant.

In *Widemshek v. Fale*, 17 Wis. 2d 337, 340, 117 N.W.2d 275, 276 (1962), the Wisconsin Supreme Court observed: "Actual damage is an essential element in the cause of action based on negligence or on fraud."

It seems to us that it would be a Hobson's choice to suggest, on the one hand, that one could not maintain a cause of action unless and until one could show not only a breach of duty but an injury or damage resulting from that breach and, on the other hand, to suggest that the time for bringing that action could begin and terminate before the individual could either reasonably be aware of the injury or damage or be able in any manner to establish its existence.

These rules are consistent with our own rules in such matters. It has long been recognized in this jurisdiction that a cause of action accrues and the statute of limitations begins to run when the aggrieved party has the right to institute and maintain a suit. See *Weiss v. Weiss*, 179 Neb. 714, 140 N.W.2d 15 (1966). Nebraska has a statute specifically declaring that concept to be the law of this jurisdiction. Neb. Rev. Stat. § 25-201 (Reissue 1979) provides: "Civil actions can only be commenced within the time prescribed in this chapter, after the cause of

action shall have accrued." The provisions of § 25-201 are applicable to § 25-224(1).

One may maintain that such an argument may have merit, but the Legislature, having spoken with clarity, cannot be disregarded. We believe, however, that we are not disregarding either the Legislature or the statutory language.

By simply turning to the dictionary and obtaining the plain meaning of "occur," one is inclined to adopt a discovery rule for § 25-224(1). While it is true that the word "occur" is often thought to mean "to happen," in fact its preferred meaning is otherwise. According to Webster's New Universal Unabridged Dictionary 1237 (2d ed. 1983), the word "occur" means "to come to mind; to be presented to the mind, imagination, or memory; to present itself." And the preferred meaning in Webster's Third New International Dictionary, Unabridged 1561 (1968), is "to be found or met with." To therefore suggest that the use of the word "occur" rather than "accrue," in § 25-224, somehow precludes the presence of a discovery rule or requires us to abandon the rule adopted by us in *Spath* is without support.

The word "occur" has previously been the source of litigation in insurance policies and generally has been held to imply a meaning of "being made known" rather than "happening." In *Wilkins v. Grays Harbor Com. Hosp.*, 71 Wash. 2d 178, 182, 427 P.2d 716, 719 (1967), the Washington Supreme Court, in defining the word "occur" within the meaning of a health insurance policy, said:

> Under the law, an illness or disease is deemed to "occur" when it first becomes manifest or active or when there is a distinct symptom or condition from which one learned in medicine can, with reasonable accuracy, diagnose the disease. The presence of germs in a body does not cause a disease to occur so long as they are only latent, inactive, and not discoverable.

And in the case of *Dependable Motors, Inc. v. Smith,* 433 S.W.2d 933, 935-36 (Tex. Civ. App. 1968), the Texas Court of Civil Appeals, in defining the word "occurring," said: "Webster's New International Dictionary (2 Ed.), p. 1684, defines the ordinary and reasonable meaning of 'occur' as: 'To meet one's eye; to be found or met with; to present itself; to appear; hence, to befall in due course; to happen. * * *' "

Most courts which have been asked to answer the specific question presented to us here have adopted a "discovery rule," whether for the reasons given by us herein or simply because to hold otherwise would deny a litigant the right to sue before the litigant, even in the exercise of due diligence, could sue. In *Hansen v. A. H. Robins, Inc.,* 113 Wis. 2d 550, 554, 335 N.W.2d 578, 580 (1983), the Wisconsin Supreme Court, responding to a certification of a question of law from the U.S. Court of Appeals for the Seventh Circuit, said:

Basically, there are three points in time when a tort claim may be said to accrue: (1) when negligence occurs, (2) when a resulting injury is sustained, and (3) when the injury is discovered. [Citations omitted.] We have held that the time of the negligent act alone is not the key to accrual of tort claims. Traditionally, under Wisconsin law " '[a] cause of action accrues where there exists a claim capable of present enforcement, a suable party against whom it may be enforced, and a party who has a present right to enforce it.' " [Citation omitted.] A tort claim is not capable of enforcement until both a negligent act and an accompanying injury have occurred. [Citation omitted.] Although the negligence and resulting injury are often simultaneous, occasionally an injury will not be sustained until a subsequent date. Therefore, we have held that tort claims accrue on the date of injury. [Citations omitted.]

The Wisconsin court went on further in *Hansen* to note at 559, 335 N.W.2d 582:

In any event the problems caused by the lapse of time must be balanced against the policy in favor of allowing diligent claimants to bring meritorious claims. It is manifestly unjust for the statute of limitations to begin to run before a claimant could reasonably become aware of the injury. Although theoretically a claim is capable of enforcement as soon as the injury occurs, as a practical matter a claim cannot be enforced until the claimant discovers the injury and the accompanying right of action. In some cases the claim will be time barred before the harm is or could be discovered, making it impossible for the injured party to seek redress. Under these circumstances the statute of limitations works to punish victims who are blameless for the delay and to benefit wrongdoers by barring meritorious claims. In short, we conclude that the injustice of barring meritorious claims before the claimant knows of the injury outweighs the threat of stale or fraudulent actions.

The Wisconsin court therefore determined that the discovery rule should be applicable in such cases.

Another reason to apply a discovery rule to a statute similar to § 25-224(1) is a recognition by courts that there is often a difference between a physical "injury" and a legal "injury" and that the time in which each may take place can be different.

In the case of *Dortch v. A. H. Robins Co., Inc.*, 59 Or. App. 310, 650 P.2d 1046 (1982), the Oregon Court of Appeals was asked to pass upon a statute identical to that which is presented to us by § 25-224(1), except as to number of years. In imposing a discovery rule on the statute, the Oregon court noted at ___, 650 P.2d at 1051:

It is thus clear that the term "injury" has both a common and a legal meaning and that our cases and those of the Supreme Court have es-

sentially settled the issue that, when used in construing a statute of limitations, the term "injury" is to be given its legal meaning. "Injury" in the legal sense means a physical injury which the plaintiff knows or as a reasonable person should know was caused by the defendant. That is when the legal injury occurs. [Citations omitted]; that is when the tort is committed, [citation omitted]; that is when the cause of action accrues and when the statute of limitations commences to run. [Citations omitted.]

One might therefore argue, from a medical standpoint, that some type of injury or damage, in the physical sense, first "happened" when the device was inserted; yet, in a legal sense, injury or damage does not "occur" until it has sufficiently manifested itself so that a reasonable person knows, or with the exercise of due diligence should have discovered, the injury or damage.

Therefore, we hold that the 4-year statute of limitations set forth in § 25-224(1) begins to run on the date on which the party holding the cause of action discovers, or in the exercise of reasonable diligence should have discovered, the existence of the injury or damage.

Because of the manner in which the question certified was presented, we believe one further comment may be necessary. By applying a discovery rule to § 25-224(1), we are not providing that the statute of limitations does not begin to run until someone advises an individual either that the injury or damage which they already know they have sustained is actionable or advises them who it is that should be sued. Discovery, as we apply it to § 25-224(1), refers to the fact that one knows of the existence of an injury or damage and not that one knows he or she has a legal right to seek redress in the courts.

In the case of *Sidney-Vinstein v. A. H. Robins Co.*, 697 F.2d 880 (9th Cir. 1983), the U.S. Court of Appeals for the Ninth Circuit was presented with such a case.

In affirming the action of the trial court in dismissing the plaintiff's petition, the ninth circuit observed at 883:

The plaintiff does not dispute the applicability of a one-year statute of limitations to her claims. She contends, however, that under the "discovery rule", the statute begins to run not upon discovery of the physical cause of the injury but upon the discovery that tortious conduct may have been involved.

In rejecting that argument the ninth circuit observed at 884:

In the absence of fraudulent concealment it is plaintiff's burden, within the statutory period, to determine whether and whom to sue. Once a plaintiff knows that harm has been done to him he must, . . . determine within the period of limitations whether to sue or not, which is precisely the decision that other tort plaintiffs must make. . . .

See, also, *Davis v. United States*, 642 F.2d 328 (9th Cir. 1981), *cert. denied* 455 U.S. 919, 102 S. Ct. 1273, 71 L. Ed. 2d 459 (1982).

As we indicated at the outset, we do not by this opinion attempt to decide the issues in this case nor attempt to determine on what date the statute of limitations began to run as to the plaintiff's various claims of injury or damage. We observe only that by applying a discovery rule to § 25-224(1), as we do, there may be different times at which the statute of limitations begins to run on various injuries or damages. The effect on this particular case must of necessity be determined by the U.S. District Court for the District of Nebraska wherein the action is pending.

Question answered and cause remanded to the U.S. District Court for the District of Nebraska for further proceedings.

JUDGMENT ENTERED.