DOUGLAS HUTMACHER AND BARBARA HUTMACHER, APPELLANTS,
V. CITY OF MEAD, NEBRASKA, APPELLEE.
430 N.W.2d 276

Filed October 7, 1988.    No. 87-065.

Jeffrey W. Meyers, of Frost, Meyers, Guilfoyle & Westover, and Richard K. Lydick for appellants.

James L. Rold, of Rold, Peppard & Piccolo, P.C., for appellee.

HASTINGS, C.J., CAPORALE, and GRANT, JJ., and MORAN and BROWER, D. JJ.

CAPORALE, J.

In this action brought pursuant to the provisions of the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. §§ 23-2401 et seq. (Reissue 1983 & Cum. Supp. 1986), now Neb. Rev. Stat. §§ 13-901 et seq. (Reissue 1987), the plaintiffs-appellants, Douglas Hutmacher and his wife, Barbara Hutmacher, claim to have suffered damages caused by defendant-appellee, City of Mead. The city moved for summary judgment on the grounds (1) that the Hutmachers allege the damages resulted from a misrepresentation for which the city is exempted from liability and (2) that, in any event, the cause is time-barred. The district court sustained the city's motion, and this appeal followed. The Hutmachers claim the district court erred in accepting either of the city's asserted bases for the dismissal of their action. We reverse and remand for further proceedings.

The first ground for seeking dismissal of the action rests on the provision of § 23-2409(5) (Reissue 1983) which exempts a political subdivision such as the city from liability arising out of claims based on misrepresentation. Thus, in this connection, the city in effect claims that it is entitled to judgment because the Hutmachers' petition fails to state a cause of action. Therefore, for the limited purpose of this issue, the city's motion is in reality one for judgment on the pleadings rather than one for summary judgment, as erroneously denominated. *White v. Ardan, Inc., ante* p. 11, 430 N.W.2d 27 (1988); *Wood v. Tesch,* 222 Neb. 654, 386 N.W.2d 436 (1986).

On such a motion the court may consider all the pleadings and give judgment for the party entitled thereto. Moreover, a motion for judgment on the pleadings admits the truth of all well-pleaded facts in the opposing party's pleadings, together with all reasonable inferences to be drawn therefrom, and the moving party admits, for the purpose of the motion, the untruth of the movant's allegations insofar as they have been

controverted. *White v. Ardan, Inc., supra*; *Wood v. Tesch, supra*; *Mueller v. Union Pacific Railroad*, 220 Neb. 742, 371 N.W.2d 732 (1985). Consequently, we turn our attention to the allegations contained in the relevant pleadings, which consist of the Hutmachers' petition and the city's answer; the Hutmachers' reply in effect denies the allegations made in the city's answer.

The petition alleges that the Hutmachers had directed the city to shut off the water service to their building "at the street"; that the city represented it had done so when it "knew, or should have known," that the shutoff valve was damaged and incapable of being shut off; that they relied on the city's representation that the water had been shut off; that the water pipe within their building "ruptured causing severe . . . damage"; and that the city's failure "to properly shut off the street valve or to disclose . . . that said valve was not shut off as represented" constituted the "sole and proximate cause of the damage."

The city's answer denies each of the material allegations contained in the Hutmachers' petition; asserts the city violated no duty owed the Hutmachers, as the water supply could not be shut off without digging "down several feet to the actual physical location of the curbside shutoff"; alleges the Hutmachers were contributorily negligent and assumed the risk; and further asserts that any cause of action the Hutmachers may have had is time-barred because they failed to present their claim to the city until more than "one (1) year after the allegedly-negligent act."

It is true the petition in part sounds in misrepresentation, but the allegation that the city failed "to properly shut off the street valve" sounds in negligence. Although a petition should not leave uncertainty as to the theory on which the pleader wishes to proceed, see *B. C. Christopher & Co. v. Danker*, 196 Neb. 518, 244 N.W.2d 79 (1976), we have held that in actions not involving extraordinary remedies, general pleadings are to be liberally construed in favor of the pleader. See, *Gilbert v. Vogler*, 197 Neb. 454, 249 N.W.2d 729 (1977); *George Rose Sodding & Grading Co., Inc. v. City of Omaha*, 187 Neb. 683, 193 N.W.2d 556 (1972), *appeal after remand* 190 Neb. 12, 205 N.W.2d 655

(1973). Moreover, by alleging in its answer that the Hutmachers were contributorily negligent and had assumed the risk, the city made clear that it interpreted the Hutmachers' petition as claiming the city was negligent in failing to shut off the water supply. Under the circumstances, we judge the petition to plead a cause of action in negligence, and therefore must conclude that the city's first ground for dismissal of the Hutmachers' action is not well founded.

That determination does not, however, end our review, for if, as the city claims in its second ground, the action is time-barred, then the district court's judgment is nonetheless correct and must be affirmed. Resolution of this issue depends on the contents of the depositions, answers to interrogatories, and the affidavit received in evidence, as well as on the allegations in the pleadings. Thus, the city's motion in this regard is one seeking summary judgment. See, *Glen Park Terr. #1 Homeowners Assn. v. M. Timm, Inc., ante* p. 48, 430 N.W.2d 40 (1988); *Kliewer v. Wall Constr. Co.,* 229 Neb. 867, 429 N.W.2d 373 (1988); *Wilson v. F & H Constr. Co.,* 229 Neb. 815, 428 N.W.2d 914 (1988).

The record establishes that the Hutmachers' building contains an apartment on the second floor and commercial space on the first floor. The commercial space had been rented to and was occupied by Hoots Inc., a business enterprise owned by Douglas Hutmacher's mother, Joan Anderson, which enterprise is engaged in the manufacture of fishing buoy markers.

Because Anderson was responsible for the payment of the utility bills, she, apparently not being in need of water, contacted the city in January of 1984 and requested discontinuance of water service to the building. A shutoff valve located inside the building had previously been turned off, so the city needed only to turn the water off at the "curb" valve. Such is accomplished by inserting a "key," a metal rod with a slot at one end designed to fit into a notch on the valve, into an opening located outside the building and then turning the valve within said opening to the "off" position.

The city's maintenance superintendent testified that the manner of installation of this particular valve required that the

key be "ground down" in order to shut the valve off. He claims to have done what was required and then reported to Anderson that the water had been shut off.

Anderson testified that although a portion of the raw materials for the buoys was kept in the dirt basement, she did not make frequent trips to that area because she was afraid of snakes. Her husband was in the basement in July of 1984, but saw no signs of water or moisture. No one connected with the building noticed any marked changes in the property between January and April 1985, except that the doors in the commercial area were more difficult to open and close than normal.

In April of 1985, it became necessary to restore water service to the building, as Douglas Hutmacher had obtained a tenant for the apartment. He then discovered that the basement was "three-quarters full" of water. After thousands of gallons of water were pumped from the basement, it was determined that the building had been structurally damaged as the consequence of a shift in the foundation and collapse of the soil support. The curb valve was dug up and found to be in the "open" position. The investigation into the source of the water also revealed that a pipe had burst.

Section 23-2416(1) (Reissue 1983) provides in relevant part that every negligence claim against a political subdivision "shall be forever barred, unless within one year after such claim accrued, the claim is made in writing to the governing body." The Hutmachers concede that they did not make their claim within 1 year of the city's failure to shut off the water, but urge that under the circumstances they were not required to do so. They contend that they were only required to make their claim within 1 year of the date on which the city's failure was discovered, as they did.

Thus, the question becomes: When does a cause of action "accrue" within the context of the foregoing statute? In applying a statute requiring that an action "be commenced within two years next after the alleged act or omission," this court, in *Rosnick v. Marks*, 218 Neb. 499, 357 N.W.2d 186 (1984), ruled that the plaintiff's cause of action accrued upon the violation of his legal right; that is, upon the defendant

lawyer's failure to file the required pleading on plaintiff's behalf. In *Rosnick*, the court reasoned that the Legislature's choice of "occurrence" language prohibited delaying the start of the limitations clock until the plaintiff suffered damages.

Six months earlier, in *Condon v. A. H. Robins Co.*, 217 Neb. 60, 349 N.W.2d 622 (1984), this court ruled that a statute requiring commencement of an action "within four years next after the date on which the death, injury, or damage complained of occurs" delayed the running of the period of limitations until a potential plaintiff discovers, or in the exercise of reasonable diligence should discover, the existence of "death, injury, or damage." The *Condon* court reasoned that predicating the cause of action on the manifestation of at least one of the three specified events meant that a potential plaintiff was not required to institute suit until death, injury, or damage had materialized. Thus, the *Condon* court read the statute then before it as an "accrual" statute such as was involved in *Spath v. Morrow*, 174 Neb. 38, 115 N.W.2d 581 (1962). The *Spath* court ruled that the period of limitations under a statute requiring an action for malpractice to be brought within 2 years "after the cause of action shall have accrued" did not begin to run until the patient discovered, or in the exercise of reasonable diligence should have discovered, the presence of a part of the broken needle left in her body while being sutured.

The suggestion, during oral argument, that this court's recent decision in *Ward v. City of Alliance*, 227 Neb. 306, 417 N.W.2d 327 (1988), somehow bears upon the present inquiry is ill founded. The plaintiff Ward delayed filing his action, not because he in the exercise of reasonable diligence could not know the cause of his injury but because he had been unsuccessful in his efforts to develop expert evidence to establish the existence of the cause he claimed. Thus, the *Ward* court, in discussing its reasons for finding the cause time-barred, correctly observed that in certain circumstances a cause of action "accrues," and the statute of limitations begins to run, when the aggrieved party has the right to institute and maintain suit, even though such party may be ignorant of the existence of the cause of action. The focus of the opinion, however, was on the fact that a statute of limitations runs when

a potential plaintiff has some awareness or imputed awareness that his injuries resulted from some wrongdoing on the part of the potential defendant, notwithstanding that the potential plaintiff's knowledge of the wrongdoing does not rise to the level of certainty. Saying that a cause of action may accrue though the aggrieved party is ignorant of its existence does not say that a cause of action necessarily accrues when an aggrieved party cannot, in the exercise of reasonable diligence, be aware of its existence. Indeed, under some circumstances we have said that a cause of action accrues, and the statute of limitations begins to run, when there has been discovery of facts constituting the basis of the cause of action or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery. *Georgetowne Ltd. Part. v. Geotechnical Servs., ante* p. 22, 430 N.W.2d 34 (1988); *Grand Island School Dist. #2 v. Celotex Corp.,* 203 Neb. 559, 279 N.W.2d 603 (1979). Neither, however, does our recent decision in *Georgetowne, supra,* that suit under the professional negligence statute was time-barred bear upon the present inquiry, for the essential concern in *Georgetowne* was when, as a factual matter, plaintiff knew of the defendant's negligence. In the final analysis, the point at which a statute of limitations commences to run must be determined from the facts of each case and the language of the governing statute. See, *Mangan v. Landen,* 219 Neb. 643, 365 N.W.2d 453 (1985); *Condon v. A. H. Robins Co.,* 217 Neb. 60, 349 N.W.2d 622 (1984).

We therefore conclude that for the purposes of § 23-2416(1), a cause of action accrues, and the period of limitations begins to run, when a potential plaintiff discovers, or in the exercise of reasonable diligence should discover, the political subdivision's negligent act or omission. In the context of this case the cause of action accrued and the period of limitations began to run when the Hutmachers discovered, or in the exercise of reasonable diligence should have discovered, the city's failure to turn off the water supply to their building.

Whether the difficulty experienced in opening and closing the building doors should have provided the Hutmachers cause, in the exercise of reasonable diligence, to discover the city's

negligent omission presents a fact question. Summary judgment is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from material facts, and when the moving party is entitled to judgment as a matter of law. *Glen Park Terr. #1 Homeowners Assn. v. M. Timm, Inc., ante* p. 48, 430 N.W.2d 40 (1988); *Kliewer v. Wall Constr. Co.,* 229 Neb. 867, 429 N.W.2d 373 (1988); *Wilson v. F & H Constr. Co.,* 229 Neb. 815, 428 N.W.2d 914 (1988). Since there here exists a genuine issue as to the ultimate inferences to be drawn from the material facts, it cannot be said the city is entitled to judgment as a matter of law. Accordingly, the district court erred in summarily dismissing the Hutmachers' action.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.