CHRIS J. RUWE, APPELLANT, V. FARMERS MUTUAL UNITED INSURANCE COMPANY, INC., SUCCESSOR TO CONCORDIA MUTUAL INSURANCE COMPANY, APPELLEE.

469 N.W.2d 129

Filed May 10, 1991.   No. 89-049.

68

Lawrence H. Yost and David C. Mitchell, of Yost, Schafersman, Yost, Lamme, Hillis & Mitchell, P.C., for appellant.

Robert T. Grimit and Michael A. England, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

Chris J. Ruwe appeals a trial court ruling that the allegations in his second amended petition did not state a cause of action when it alleged that his insurance carrier, Farmers Mutual United Insurance Company, Inc. (Farmers), acted in bad faith in settlement of Ruwe's first-party fire insurance claim.

We reverse the ruling of the district court for Washington County and remand the cause for further proceedings.

Specifically, Ruwe's three assignments of error can be combined to allege that the trial court erred in (1) failing to recognize that Ruwe stated a cause of action for an insurer's bad faith settlement of a claim with its insured and (2) admitting into evidence an affidavit of the insurer's attorney in support of its motion for summary judgment. Our decision concerning the first assignment of error obviates the necessity of reaching Ruwe's second assignment of error.

Before reciting the facts in this case, it is first necessary to determine the record to be considered on appeal. On September 23, 1988, Farmers moved for summary judgment. On December 23, 1988, the court, without explanation, sustained Farmers' motion. On January 6, 1989, Ruwe moved for reconsideration of the ruling on Farmers' summary judgment motion or, alternatively, for a new trial. In his motion, Ruwe stated,

> It is not clear from the Court's ruling whether it sustained the Defendant's Motion for lack of Nebraska authorities supporting Plaintiff's Cause of Action or whether it sustained said Motion for lack of a factual basis to support a claim of Bad Faith as alleged in Plaintiff's Second Amended Petition.

Although Ruwe's motion for a new trial was not timely, see Neb. Rev. Stat. § 25-1143 (Reissue 1989) (a motion for a new trial must be made within 10 days of the decision rendered, with two exceptions not applicable here), he nonetheless filed his notice of appeal within 30 days of December 23, 1988, as required by Neb. Rev. Stat. § 25-1912 (Reissue 1989). Therefore, this court has jurisdiction of this appeal.

During a hearing on Ruwe's motion for a new trial, Farmers explained to the trial court that it moved for summary

judgment on the basis that Ruwe failed to state a cause of action, but that if he did state a cause of action, there was no genuine issue of material fact for a jury to resolve. The district court entered an order on January 13, 1989, finding that the summary judgment motion was sustained on the basis that Ruwe had failed to state a cause of action. Neither party filed any motion thereafter.

A question arises because of Farmers' attempt to use a summary judgment motion to challenge whether Ruwe had stated a cause of action. A motion for summary judgment is not a proper method to challenge the sufficiency of a petition to state a cause of action. *Workman v. Workman*, 167 Neb. 857, 95 N.W.2d 186 (1959). This court has further held that "[a] motion for summary judgment is not intended to be a substitute for . . . a demurrer, or a motion for a judgment on the pleadings. [Citation omitted.]" See *Regnev, Inc. v. Shasta Beverages*, 215 Neb. 230, 233, 337 N.W.2d 783, 785 (1983). The Legislature has provided that a petition may be challenged by demurrer for a failure to state a cause of action. See Neb. Rev. Stat. § 25-806 (Reissue 1989). It has further provided that a summary judgment shall be rendered if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. See Neb. Rev. Stat. § 25-1332 (Reissue 1989). However, there simply is no statutory authorization for this hybrid procedure which Farmers has created to challenge Ruwe's second amended petition. When it has been asserted in a summary judgment motion that an opposing party has failed to state a cause of action, as far as that issue is concerned, the motion may be treated as one in fact for a judgment on the pleadings, notwithstanding its designation as something other than that. *Hutmacher v. City of Mead*, 230 Neb. 78, 430 N.W.2d 276 (1988); *Wood v. Tesch*, 222 Neb. 654, 386 N.W.2d 436 (1986), *overruled on other grounds, Landon v. Pettijohn*, 231 Neb. 837, 438 N.W.2d 757 (1989); *Mueller v. Union Pacific Railroad*, 220 Neb. 742, 371 N.W.2d 732 (1985). Therefore, we consider only the pleadings to determine if Ruwe's second amended petition stated a cause of action. See *Hutmacher,*

*supra.*

> [A] motion for judgment on the pleadings admits the truth of all well-pleaded facts in the opposing party's pleadings, together with all reasonable inferences to be drawn therefrom, and the moving party admits, for the purpose of the motion, the untruth of the movant's allegations insofar as they have been controverted. [Citations omitted.]

*Hutmacher, supra* at 79-80, 430 N.W.2d at 278.

In his second amended petition, which was filed on June 18, 1987, Ruwe listed two causes of action: (1) breach of contract and (2) bad faith settlement of a first-party insurance claim. This appeal concerns only Ruwe's second cause of action.

In that regard, Ruwe alleged the following: that he is a resident of Washington County, Nebraska; that on January 1, 1986, Concordia Mutual Insurance Company (Concordia) merged into Farmers; and that by the terms of the merger Farmers assumed all liabilities of Concordia.

Ruwe further alleged in substance that Concordia issued and delivered to him its policy of insurance, insuring for a period of 3 years certain property; that a hog barn and three associated grain bins were later added to the policy; that the hog barn was insured in the amount of $37,500 and the three grain bins for $2,500; that he paid, and Concordia accepted, all premiums; and that among the casualties against which Concordia insured him was damage caused by fire.

He also alleged that on September 21, 1985, while the policy was in force and effect, the hog barn and the livestock housed therein were wholly destroyed by fire and the three grain bins were damaged; that on September 22, 1985, he notified Concordia's agent of the damage to his buildings and livestock caused by the fire; that Concordia's agents made repeated inspections of the destroyed building, but never thoroughly investigated the fire scene; that he signed a proof of loss which was timely submitted to Concordia on November 12, 1985; that on December 27, 1985, Concordia advised Ruwe that it was denying his claim and, in so doing, breached the implied covenant of good faith and fair dealing under the policy by withholding benefits based on the false accusation, without a

reasonable basis, that he had committed arson; and that Concordia acted unreasonably and in bad faith by denying his claim without a proper and thorough investigation of the fire scene.

Ruwe claimed that as a proximate result of the defendant's wrongful failure to pay benefits under the policy, he suffered damages in the sum of $128,070.44 for the loss of his hog farrowing business as well as the aggravation and inconvenience of being deprived of the insurance proceeds to which he was entitled. A copy of Ruwe's insurance policy was attached to and made part of Ruwe's second amended petition.

In its answer to Ruwe's second amended petition, Farmers admitted that Ruwe was a resident of Washington County, Nebraska, and that Farmers assumed Concordia's liabilities after the two entities merged. Except for Ruwe's admissions against interest, Farmers denied each and every allegation set forth in Ruwe's second amended petition.

The court entered an order on February 9, 1988, bifurcating Ruwe's breach of contract and bad faith causes. After 2 days of trial on Ruwe's breach of contract claim, Farmers, on July 20, 1988, offered to confess judgment in the amount of $45,570. Ruwe agreed, and the trial court entered judgment in that amount in his favor. Ruwe was further awarded attorney fees in the amount of $24,786.25 on that cause of action.

As stated, Farmers thereafter successfully moved for summary judgment on Ruwe's second cause of action, and this timely appeal followed.

In *Braesch v. Union Ins. Co.*, 237 Neb. 44, 464 N.W.2d 769 (1991), this court held that an injured policyholder who is also a "covered person" or an injured policyholder who is also a beneficiary may bring a cause of action in tort against the policyholder's insurer for bad faith settlement of the policyholder's insurance claim. " 'To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the [insurance] policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. . . .' " *Id.* at 57, 464 N.W.2d at 777 (quoting *Anderson v. Continental Ins. Co.*, 85 Wis. 2d 675, 271 N.W.2d 368 (1978)). With respect to the first

part of that test, we agree with the view expressed by the *Anderson* court:

> The tort of bad faith can be alleged only if the facts pleaded would, on the basis of an objective standard, show the absence of a reasonable basis for denying the claim, *i.e.*, would a reasonable insurer under the circumstances have denied or delayed payment of the claim under the facts and circumstances. [Citations omitted.]

*Anderson, supra* at 692, 271 N.W.2d at 377. Accord *Fehring v. Republic Ins. Co.*, 118 Wis. 2d 299, 347 N.W.2d 595 (1984). We further held in *Braesch* that in such actions, a plaintiff could recover damages for mental suffering proximately caused by an insurer's bad faith settlement of the plaintiff's claim.

With respect to the pleading requirements at issue, Neb. Rev. Stat. § 25-804(2) (Reissue 1989) requires a statement of the facts constituting the cause of action, in ordinary and concise language, and without repetition. A petition is sufficient if, from the statement of facts set forth in the petition, the law entitles a plaintiff to recover. *Dixon v. Reconciliation, Inc.*, 206 Neb. 45, 291 N.W.2d 230 (1980); *Cagle, Inc. v. Sammons*, 198 Neb. 595, 254 N.W.2d 398 (1977). "[I]t is the facts well pleaded, not the theory of recovery or legal conclusions, which state a cause of action. [Citations omitted.]" *Moore v. Puget Sound Plywood*, 214 Neb. 14, 18, 332 N.W.2d 212, 215 (1983). "Pleadings frame the issues upon which a cause is to be tried and advise the adversary as to what he must meet. [Citation omitted.]" *Id.* In actions not involving extraordinary remedies, general pleadings are to be liberally construed in favor of the pleader. *Hutmacher v. City of Mead*, 230 Neb. 78, 430 N.W.2d 276 (1988).

In *Braesch, supra*, the plaintiffs alleged that their insurer denied coverage despite the fact that an uninsured motorist's negligence was the sole and proximate cause of their daughter's death and that their insurer in bad faith refused to settle their claim, never entered into serious negotiations, and conducted only a perfunctory investigation. The *Braesch* plaintiffs further claimed that the refusal to settle was part of an effort to put psychological pressure on them to settle their claim for

considerably less than its value. We held there that the petitions stated causes of action. Though the allegations of bad faith are different in this case than in *Braesch*, it is the breach of the covenant of good faith and fair dealing from which liability springs and which is implicated in both cases. The tort embraces any number of bad faith settlement tactics, such as inadequate investigation, delays in settlement, false accusations, and so forth. See, generally, S. Ashley, Bad Faith Actions Liability and Damages §§ 5.04 to 5.22 (1991).

Ruwe alleged that certain of his property was covered by a fire insurance policy issued to him by Farmers, that the property was damaged by fire, that he notified Farmers of the loss, and that Farmers denied his claim. Ruwe's principal allegation of bad faith is that Farmers denied his claim without a proper and thorough investigation of the fire scene and falsely accused him of arson without a reasonable basis. The knowledge or reckless disregard element of the *Braesch* test may be inferred and imputed to an insurance company when there is a reckless indifference to facts or to proof submitted by the insured. See, *Gulf Atlantic Life Ins. Co. v. Barnes*, 405 So. 2d 916 (Ala. 1981); *Anderson v. Continental Ins. Co.*, 85 Wis. 2d 675, 271 N.W.2d 368 (1978). This reckless indifference to the facts or to the proof submitted by an insured is shown by an insurer's failure to conduct a proper investigation and subject the results to a reasonable evaluation and review. *Atlantic Life, supra*; *Anderson, supra*. In this case, Ruwe's claim that Farmers denied his claim without a proper and thorough investigation of the fire scene sufficiently alleged that element of the *Braesch* test. Ruwe's second amended petition sufficiently alleged Ruwe's status as an injured policyholder-covered person, the absence of a reasonable basis for Farmers' denial of the benefits of the fire insurance policy, and Farmers' knowledge or reckless disregard of the lack of a reasonable basis for denying Ruwe's claim.

Ruwe's claims that he suffered economic losses and mental suffering as the proximate result of Farmers' wrongful failure to pay the policy benefits were proper elements of his damages. Although in *Braesch v. Union Ins. Co.*, 237 Neb. 44, 464 N.W.2d 769 (1991), we did not reach the question of the

recoverability of damages for economic loss, it is clear that these damages may be recouped. In *Braesch*, we recognized that the amount recoverable under an insurance policy does not compensate a party entitled to bring a bad faith action for mental anguish. Likewise, an aggrieved policyholder may suffer economic losses far in excess of the limits of the policy. For example, in *Merlo v. Standard Life and Accident Ins. Co. of Cal.*, 59 Cal. App. 3d 5, 130 Cal. Rptr. 416 (1976), an insurer's bad faith refusal to pay disability benefits ultimately resulted in an insured having to sell his home in foreclosure proceedings at less than its fair market value. The *Merlo* court held that the insured's consequential economic loss included the loss of equity in his home, which amounted to $7,470. Thus, when an insurer acts in bad faith in the settlement of a claim with its insured, the insured is entitled to recover damages for economic loss proximately caused by the insurer's actionable conduct. See, e.g., *Chavers v. National Sec. Fire & Cas. Co.*, 405 So. 2d 1 (Ala. 1981); *Delos v. Farmers Ins. Group, Inc.*, 93 Cal. App. 3d 642, 155 Cal. Rptr. 843 (1979); *Bibeault v. Hanover Ins. Co.*, 417 A.2d 313 (R.I. 1980). See, also, W. Shernoff, S. Gage & H. Levine, Insurance Bad Faith Litigation § 7.04[1] (1990); 1 Shepard's Causes of Action 205, § 28 (1983).

While Ruwe could have been more detailed in his allegation that Farmers' investigation was inadequate, "[t]he fact a party may be entitled to require a more definite statement from a petitioner does not necessarily mean that the statement as originally made was not sufficient to state a cause of action. [Citation omitted.]" *In re Guardianship and Conservatorship of Sim*, 225 Neb. 181, 198, 403 N.W.2d 721, 733 (1987).

Under this court's standard of review of a judgment on the pleadings, the statement of facts set forth in Ruwe's second amended petition properly and adequately framed the issues upon which the cause was to be tried and advised Farmers as to what it had to meet.

The judgment is reversed and the cause remanded to the district court for Washington County with directions to allow the plaintiff to proceed upon his second amended petition as to his second cause of action.

REVERSED AND REMANDED WITH DIRECTIONS.

GRANT, J., concurring.

I agree wholly with the opinion in this case. I write separately only to inform the members of the bar that problems lurk in the practice of law that most practicing lawyers and judges (specifically including the writer of this concurrence) never realize. In this case, an expert witness testified on behalf of the defendant. During his sworn testimony, this expert testified that he had graduated from the Massachusetts Institute of Technology in 1972, with a degree in electrical engineering, and from Texas A & M in 1982, with a Ph.D. in the same subject. He rendered learned expert opinions in the case.

Some time after cross-examination of this expert, plaintiff's attorney and defendant's attorney (not defendant's present counsel) entered into a stipulation that no one with the witness' name had graduated from MIT in 1972 and that no one with the witness' name had ever graduated from Texas A & M or had received a doctorate from that school in 1982 or any other year. This stipulation apparently precipitated defendant's offer to confess judgment, as referred to in the majority opinion.

I feel that such information is appropriately disseminated to the bar, to at least reduce the chances that similar misfortunes may occur to unsuspecting lawyers. It would seem not only that Caesar's wife must be above suspicion, but that the careful lawyer should check to determine if she was legally married to Julius.